[No. 6040-3-III.   Division Three.   April 11, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS ALLEN LUDVIK, *Appellant.*

*Terry L. Deglow, Special Public Defender,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Robert P. Kingsley, Deputy,* for respondent.

Munson, J.—Douglas Allen Ludvik appeals his conviction for unlawful possession of a controlled substance, psilocyn. He contends the search warrant authorizing the search of his home was invalid because the supporting affidavit contained information illegally seized, and the

remaining information in the affidavit did not provide a sufficient factual basis establishing probable cause. He also contends his statements to the officers during the search were not based upon a valid waiver of *Miranda* rights. We affirm.

In November 1982, Brooks Carmichael, a state game agent, observed heavy pedestrian traffic in and out of Mr. Ludvik's residence located across the street from the Carmichael residence. The individuals involved stayed for only brief periods of time. As many as 15 vehicles would arrive in an hour. This traffic would continue until 10 or 11 o'clock at night.

Several days after he began observing this traffic, Mr. Carmichael saw what he believed to be a drug transaction. Shortly after a vehicle arrived, a hallway light was turned on in the Ludvik residence. The light in the room directly facing the street was left off, but Mr. Carmichael could see inside because the room had no curtains. He observed an object being passed from one individual to another. Mr. Carmichael supplemented his view with binoculars and saw a plastic baggie being exchanged for money.

On November 15, 1982, Mr. Carmichael reported his observations to the Spokane County Sheriff's Department. Detective Douglas W. Silver conferred with the prosecutor's office concerning the possibility of a search warrant. It was decided a further investigation should be conducted. Mr. Carmichael agreed to the use of his residence for purposes of a police surveillance.

Deputy Curtis Quasnick set up the surveillance and utilized binoculars and a spotting scope. The binoculars had a 10–power lens, and the spotting scope was set at a magnification variation of 16. Neither instrument had any special light–gathering characteristics.

Deputy Quasnick observed the same pattern of traffic previously reported by Mr. Carmichael. Over a period of 5 hours, he observed 12 vehicles. During this time, both he and Mr. Carmichael saw one individual leave the residence holding a plastic baggie which they believed contained

marijuana. This activity was observed first with the naked eye and then with the spotting scope.

Later, Deputy Quasnick's attention was drawn to the window facing the street when the adjacent hallway light was turned on. Mr. Ludvik entered the darkened room and retrieved what appeared to be a baggie of marijuana. This activity was initially viewed with the naked eye and then supplemented with the spotting scope.

On November 16, 1982, Detective Silver filed an affidavit for a search warrant. The affidavit contained the information originally supplied by Mr. Carmichael and also the observations made during the police surveillance. A warrant was issued authorizing the search of the residence for evidence of unlawful possession of a controlled substance.

During the execution of the warrant, both Mr. Ludvik and his roommate were detained. Mr. Ludvik was advised of his *Miranda* rights from a standard rights card. He acknowledged those rights both orally and in writing. He later indicated to the officers he would show them where the contraband was located, rather than have his house torn apart.

Mr. Ludvik then led the officers to a hallway closet. Among the items seized from the closet was a plastic baggie containing dried mushrooms. These mushrooms were subsequently analyzed and found to contain psilocyn.

Mr. Ludvik was charged with unlawful possession of a controlled substance. He subsequently moved to suppress the evidence seized during the search and to exclude statements made to the sheriff's deputies during the search. His principal contentions were that the search warrant was invalid because the information contained in the supporting affidavit was the result of an unlawful governmental intrusion into his privacy, and his statements were not the result of a valid waiver of *Miranda* rights.

During the hearing on the motions, the State presented testimony the activities in the house could have been observed from the street without the use of binoculars or the spotting scope. The house is a single–story dwelling and

the surveillance had been conducted from the Carmichael residence only to avoid detection by the occupants. There had been no visual impediment to seeing into the house through the window facing the street. There was further testimony the sheriff's office had established guidelines for the use of binoculars and similar devices which were only to be employed to supplement what could otherwise be seen with the naked eye from a lawful vantage point.

In response, Mr. Ludvik testified he kept the room dark in order to maintain his privacy, but admitted it would be reasonable to assume a person in the street in front of his house could see inside if there was enough light, since the room had no curtains. He further stated he kept his living room curtains drawn to protect his privacy.

The trial court ruled the evidence gathered by Mr. Carmichael before contacting the sheriff's office was lawful because the observations did not involve any governmental activity. In short, Mr. Carmichael had acted as a private citizen. However, the observations made by Deputy Quasnick and Mr. Carmichael through the window of the Ludvik residence during the police surveillance constituted an unreasonable intrusion into Mr. Ludvik's legitimate expectation of privacy in his home. Nevertheless, the remaining information contained in the supporting affidavit established probable cause; therefore, the warrant was valid and the evidence seized during its execution was not subject to exclusion.

With respect to the admissibility of Mr. Ludvik's statements to the deputies during the search, the State presented testimony Mr. Ludvik had been advised of his *Miranda* rights from a standard rights card and had indicated both orally and in writing he understood these rights and wished to waive them. There was further testimony Mr. Ludvik was cooperative and coherent and no coercion had been used in obtaining the statements. The statements had been unsolicited by the officers. The court ruled Mr. Ludvik's statements were admissible. Mr. Ludvik was tried without a jury and found guilty. This appeal followed.

Mr. Ludvik initially contends Mr. Carmichael's observations, prior to contacting the sheriff's department, constituted a governmental search because Mr. Carmichael is employed as a state game agent and has authority under RCW 77.12.060 and .080 to execute search warrants and make arrests. Because his information provided the basis for the issuance of the search warrant, evidence seized during its execution should have been excluded.

Constitutional guaranties against unreasonable searches and seizures protect only against governmental actions and do not require the application of the exclusionary rule to evidence obtained from private citizens acting on their own initiative. *Burdeau v. McDowell*, 256 U.S. 465, 475, 65 L. Ed. 1048, 41 S. Ct. 574, 13 A.L.R. 1159 (1921); *State v. Gonzales*, 24 Wn. App. 437, 440, 604 P.2d 168 (1979), *review denied*, 93 Wn.2d 1028 (1980); *State v. Sweet*, 23 Wn. App. 97, 99, 596 P.2d 1080, *review denied*, 92 Wn.2d 1026 (1979); *State v. Legas*, 20 Wn. App. 535, 538, 581 P.2d 172 (1978); *State v. Agee*, 15 Wn. App. 709, 713, 552 P.2d 1084 (1976), *aff'd on other grounds*, 89 Wn.2d 416, 573 P.2d 355 (1977); *State v. York*, 11 Wn. App. 137, 139, 521 P.2d 950 (1974); *State v. Birdwell*, 6 Wn. App. 284, 288, 492 P.2d 249, *review denied*, 80 Wn.2d 1009, *cert. denied*, 409 U.S. 973, 34 L. Ed. 2d 237, 93 S. Ct. 346 (1972); *State v. Wolfe*, 5 Wn. App. 153, 155, 486 P.2d 1143, *review denied*, 80 Wn.2d 1002 (1971). The history and origins of both the fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution clearly show they were intended as a restraint upon sovereign authority; in the absence of state action, they have no application regardless of the scope of protection which would otherwise be afforded under either provision. *Burdeau v. McDowell, supra; accord, State v. Myrick*, 102 Wn.2d 506, 688 P.2d 151 (1984); *State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983).

In determining whether a search is subject to constitutional controls, official involvement is not measured by the primary occupation of the person conducting the search,

but the capacity in which he acts at the time of the search. *People v. Wolder,* 4 Cal. App. 3d 984, 84 Cal. Rptr. 788, 793–94 (1970); *People v. Martin,* 225 Cal. App. 2d 91, 36 Cal. Rptr. 924, 927 (1964); *State v. Pearson,* 15 Or. App. 1, 514 P.2d 884, 886 (1973); *Shelton v. State,* 479 S.W.2d 817, 820 (Tenn. Crim. App.), *cert. denied,* 409 U.S. 852, 34 L. Ed. 2d 95, 93 S. Ct. 65 (1972). Further, a mere purpose to aid the government does not transform an otherwise private search into a governmental search. *United States v. Newton,* 510 F.2d 1149, 1153 (7th Cir. 1975); *State v. Sweet, supra* at 100.

Here, Mr. Carmichael was not acting in an official capacity at the time of his initial observations. His surveillance of the Ludvik residence was not related to his official duties. He exercised no greater authority under the circumstances than any other private citizen. He took no other action on his own, but instead contacted law enforcement authorities. His actions had not been coordinated or encouraged by the police. Therefore, the trial court did not err in determining Mr. Carmichael's initial observations constituted a private search and were not subject to exclusion.

Mr. Ludvik next contends that, even assuming Mr. Carmichael's initial observations are not subject to challenge, this information along with the activities seen outside his home did not provide probable cause for the issuance of the warrant. He also argues the unlawful police observations into his home should have automatically invalidated the search warrant and the evidence seized under it.

It is generally recognized evidence obtained during an illegal search does not make unusable the same information previously gained from an independent source. *State v. O'Bremski,* 70 Wn.2d 425, 429–30, 423 P.2d 530 (1967); *State v. Legas, supra* at 538–39; *State v. York, supra* at 139. Although cases applying this rule deal solely with challenges under the Fourth Amendment, it is apparent this rule is consistent with the requirements of article 1, section 7, of the Washington State Constitution.

Assuming arguendo the trial court correctly excluded the observations into the Ludvik residence during the police surveillance,[1] the determinative issue is whether the remaining information in the affidavit was sufficient to uphold the warrant.

In determining probable cause, the relevant inquiry is whether an ordinary, prudent person would conclude from the facts and circumstances that a crime has occurred, and evidence of that crime can be found at the location to be searched. *State v. Fisher,* 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied,* 457 U.S. 1137, 73 L. Ed. 2d 1355, 102 S. Ct. 2967 (1982). Here, there was a sufficient factual basis

---

[1]In addressing this issue, the State claims the trial court erred in determining the use of binoculars and the spotting scope involved an unreasonable intrusion into Mr. Ludvik's private affairs. This argument is persuasive.

In *State v. Manly,* 85 Wn.2d 120, 530 P.2d 306, *cert. denied,* 423 U.S. 855, 46 L. Ed. 2d 81, 96 S. Ct. 104 (1975), the Washington Supreme Court approved the use of binoculars by police in order to confirm what could otherwise lawfully be seen with the naked eye. *See also State v. Jones,* 33 Wn. App. 275, 277, 653 P.2d 1369 (1982), *review denied,* 99 Wn.2d 1003 (1983); *State v. Jordan,* 29 Wn. App. 924, 631 P.2d 989 (1981). Similarly, it was stated in *State v. Jones, supra* at 277, that the use of binoculars to view at a distance that which could have lawfully been observed by police from a closer proximity, but for the desire to avoid detection by the suspects, violates neither the Fourth Amendment nor its counterpart in the Washington Constitution. *See also People v. Arno,* 90 Cal. App. 3d 505, 153 Cal. Rptr. 624, 626 (1979); 1 W. LaFave, *Search and Seizure* § 2.2, at 258 (1978).

Here, the record indicates the binoculars and spotting scope were utilized only for enhancement purposes. The activities inside the Ludvik house were initially viewed with the naked eye. The window facing the street had no curtains or other obstructions, and the light from the hallway provided sufficient illumination to see the activities within.

Similarly, there was testimony that the same activities inside the house could have been viewed from the street. Mr. Ludvik admitted this fact. The sheriff's department merely set up the surveillance in Mr. Carmichael's home to avoid detection.

Since the observations were not dependent upon the use of telescopic devices, no reasonable privacy interest was invaded regardless of Mr. Ludvik's subjective beliefs. *State v. Manly, supra; State v. Jones, supra.* Therefore, the trial court erred in determining the observations made with the binoculars and the spotting scope were subject to exclusion. Based upon this information and the remaining factual basis contained in the affidavit, there was probable cause for the issuance of the warrant.

remaining in the affidavit to uphold the search warrant. Even excluding the police observations into the Ludvik home using binoculars and the spotting scope, the facts in the affidavit reasonably lend themselves to the conclusion controlled substances could be found inside the residence. The trial court determination of probable cause is supported by (1) the heavy traffic in and out of the Ludvik residence, which was observed for several days; (2) Mr. Carmichael's observation of a plastic baggie, containing a dark substance, being exchanged for money, and (3) the later police observation of an individual leaving the residence with a baggie containing a dark substance.

Finally, Mr. Ludvik contends the trial court erred in determining his statements to police as to the location of the contraband were admissible. He claims the statements were not based upon a valid waiver of *Miranda* rights.

The State bears the burden of proving a knowing and voluntary waiver of constitutional rights by a preponderance of the evidence. *State v. Braun,* 82 Wn.2d 157, 162, 509 P.2d 742 (1973); *State v. Gross,* 23 Wn. App. 319, 597 P.2d 894, *review denied,* 92 Wn.2d 1033 (1979). Here, the record clearly establishes Mr. Ludvik was advised of his *Miranda* rights and indicated, both orally and in writing, he understood them and wished to waive them. Further, there was testimony that Mr. Ludvik was coherent, and his statements regarding the contraband were unsolicited. The officers had not created a situation likely to induce Mr. Ludvik to make incriminating statements. *Rhode Island v. Innis,* 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980); *State v. Grisby,* 97 Wn.2d 493, 505, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983). The officers' mere presence in the home did not constitute coercion so as to negate the voluntary nature of the statements. *State v. Seablom,* 103 Wash. 53, 55, 173 P. 721 (1918). Therefore, the statements were not subject to exclusion.

The conviction is affirmed.

GREEN, C.J., and MCINTURFF, J., concur.