[No. 37256-4-I.    Division One.    April 7, 1997.]

THE STATE OF WASHINGTON, *Respondent,* v. ALLEN
RICHMAN, *Appellant.*

Gregory C. Link, for appellant.

Norm Maleng, Prosecuting Attorney, and Dana Cashman, Deputy, for respondent.

ELLINGTON, J. — This shoplifting case requires us to decide whether the inevitable discovery rule satisfies the requirements of our Washington State Constitution. We find that the rule contains adequate safeguards to protect the privacy interests of Washington citizens and is therefore constitutional, that the rule was properly applied here, and therefore affirm.

## Suppression Hearing

Allen Richman was convicted of first degree theft for stealing clothing from Littler's clothing store. He contends that the court erred in admitting evidence that a belt and a pair of trousers were discovered in his briefcase. (This evidence was significant because the value of these items elevated Richman's crime to first degree theft.) The court held a suppression hearing to determine whether the evidence was obtained in conformity with the Fourth Amend-

ment to the United States Constitution and Washington Constitution article I, section 7. Zino Boudra, then Littler's store manager, and Seattle police officer Sage Farwell testified at this hearing.

Boudra testified he believed that Richman had stolen a suit because price tags and an empty suit hanger were found in a dressing room Richman had just vacated. Boudra followed Richman out of the store and, after a short chase, apprehended him in a parking garage. With the help of a parking attendant, Boudra marshaled Richman into an office in the garage and telephoned the police. Richman then told Boudra, "If you hang up, I will give you the merchandise back." Boudra refused.

About five minutes later, Officer Farwell and another officer arrived. As Farwell walked into the office, Boudra told him that Richman had stolen merchandise from Littler's. Meanwhile, Richman was removing his trench coat and an underlying sweater, thereby revealing a suit jacket that Boudra identified as belonging to Littler's. Underneath the jacket was a cashmere sweater and a sports shirt, both of which had Littler's price tags attached.

Approximately 10 minutes after Farwell arrived, a stolen belt and the stolen suit pants were discovered in Richman's briefcase. The record is unclear as to who opened the briefcase, but Boudra believed that a police officer did.

Officer Farwell testified that as he entered the office, Boudra informed him that Richman had stolen clothing from Littler's. Richman was not free to leave once Farwell heard this accusation. Boudra then handed Farwell the suit, which he inspected and handed back. Farwell also saw other pieces of clothing, including several shirts and a belt, but could not remember the location of these items. He could not recall whether he opened the briefcase or precisely when he arrested Richman. He testified that as a matter of practice and for safety reasons, he searches

articles like bags or briefcases in the possession of an arrestee.

## The Admissibility Ruling

The trial court found that Boudra's testimony regarding the sequence of events was "particularly credible." The court therefore found that Richman began disrobing and handing Boudra the suit jacket, the shirt, and the sweater either shortly before or just as Farwell arrived, and that Boudra immediately informed Farwell that Richman was a thief. The court ruled that at this point, Farwell had probable cause to arrest Richman. Because Farwell could not remember when he saw the items in the briefcase, or when he arrested Richman, the court could not determine whether the evidence had been seized during a search incident to Richman's arrest. Nevertheless, the court ruled that the evidence was admissible because it would have inevitably been discovered incident to Richman's arrest.

## Inevitable Discovery

■■ A warrantless search is impermissible under both the Fourth Amendment and Washington Constitution article I, section 7 unless the State proves that the search was conducted under a recognized exception. *See, e.g., State v. Johnson*, 128 Wn.2d 431, 447, 909 P.2d 293 (1996). When the State cannot prove that the search was valid, the evidence is generally excluded from admission at trial. *See State v. Boland*, 115 Wn.2d 571, 582-83, 800 P.2d 1112 (1990). The doctrine of inevitable discovery is recognized as an exception to the exclusionary rule under the Fourth Amendment. The doctrine permits admission of illegally obtained evidence if the State can prove that the police did not act unreasonably or attempt to accelerate discovery, and would have inevitably discovered the evidence through proper and predictable investigatory procedures. *Nix v. Williams*, 467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984); *see also State v. White*, 76 Wn. App. 801, 808-

09, 888 P.2d 169 (1995) (citing *State v. Broadnax*, 98 Wn.2d 289, 304, 654 P.2d 96 (1982) (Dolliver, J., dissenting)), *aff'd on other grounds*, 129 Wn.2d 105, 112, 915 P.2d 1099 (1996).

■ The question here is whether the inevitable discovery rule satisfies article I, section 7 of the Washington Constitution. To resolve this issue, we must first determine whether our state constitution[1] provides broader protection than does the federal constitution.[2] *Johnson*, 128 Wn.2d at 444-45. This determination is made by examining article I, section 7 in light of the six factors originally set forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).[3]

■ ■ We need not conduct an exhaustive examination of the *Gunwall* factors, however, because article I, section 7 has already been often interpreted as providing broader protection of privacy interests than that provided by the Fourth Amendment. Instead, we adopt the analysis of the *Gunwall* court as to the first, second, third and fifth factors. *See State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996); *Johnson*, 128 Wn.2d at 445; *State v. Goucher*, 124 Wn.2d 778, 783, 881 P.2d 210 (1994); *Boland*, 115 Wn.2d at 576. Thus, we focus here only on those factors unique to the factual context of the present issue: matters

---

[1]The state constitutional provision recites: "No person shall be disturbed in [that person's] private affairs, or [the person's] home invaded, without authority of law." Wash. Const. art. I, § 7.

[2]The federal constitutional provision recites:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. amend. IV.

[3]The factors are: (1) the textual language of the state constitution; (2) significant differences in the texts of parallel provisions of the federal and state constitutions; (3) state constitutional and common law history; (4) preexisting state law; (5) differences in structure between the federal and state constitutions; and (6) matters of particular state interest or local concern. *See generally Gunwall*, 106 Wn.2d at 61-62.

of particular state interest or local concern, and preexisting state law. *Johnson,* 128 Wn.2d at 445; *State v. Russell,* 125 Wn.2d 24, 58, 882 P.2d 747 (1994).

██ ██ Certainly privacy interests are a matter of particular state interest and local concern. *See, e.g., Johnson,* 128 Wn.2d at 446. The interest of a citizen in the privacy of the contents of his briefcase needs no analysis. And because the inevitable discovery rule can apply to a wide spectrum of privacy interests, the vitality of the rule is axiomatically a matter of state interest and local concern. As to preexisting state law, no relevant state statute has been identified, and existing Washington case law does not analyze the inevitable discovery rule under article I, section 7. *See, e.g., State v. Warner,* 125 Wn.2d 876, 889, 889 P.2d 479 (1995),[4] *White,* 76 Wn. App. at 808-09. We conclude independent state constitutional analysis is appropriate.

Richman maintains that the rule is defective under article I, section 7, reasoning that the rule lacks articulable guidelines for the police, thus it is not and cannot be jealously guarded and carefully drawn. *See, e.g., Hendrickson,* 129 Wn.2d at 70. Richman fears that the rule will eliminate incentives for the police to obtain evidence legally by authorizing admission of unlawfully obtained evidence and rewarding improper seizures. And regardless of why the evidence was unlawfully seized, he argues that courts can only speculate as to whether the evidence would have been lawfully discovered.

We first note that "articulable guidelines for the police" is hardly the objective for a rule which may be invoked only where evidence was improperly obtained by police in

---

[4]We note that in *Warner,* however, the Supreme Court strongly implied that the rule does not offend article I, section 7. In that case, the court remanded for further proceedings on the premise that the "fruit" of an unlawfully obtained statement would be "admissible if the prosecution [could] show that the evidence inevitably would have been discovered absent the incriminating statement." *Warner,* 125 Wn.2d at 889 (citing *Nix,* 467 U.S. at 444). This dicta received no extensive discussion and was supported only by federal authority, but we doubt the *Warner* court would have so sanctioned the rule if it perceived state constitutional defects.

the first place (or where, as here, the evidence does not permit the State to prove otherwise). The rule guides courts, not police. And because the rule does not authorize police to seize evidence without a warrant, Richman's focus on "jealously guarded" exceptions to the warrant requirement is misplaced. Such exceptions are rules for *proper* seizure of evidence absent a warrant. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The question raised here is different: Does the admission of improperly obtained evidence violate the privacy interests of Washington citizens when it is proved that the evidence would have inevitably been obtained by police using proper procedures?

Unlike most other article I, section 7 cases, we do not here address whether a particular invasion of privacy tolerable under the Fourth Amendment is intolerable under article I, section 7. Instead, we begin with the premise that Richman's privacy rights were violated under both the state and federal constitutions, and we must determine whether a violation of article I, section 7 automatically mandates exclusion of the offending evidence regardless of the fact that the same evidence would inevitably have been constitutionally seized. The rationale for exclusion of improperly seized evidence is usually described as deterrence of unlawful police conduct. *See e.g., Nix*, 467 U.S. at 442-43.

Our courts have frequently relied on the "independent source doctrine" to uphold admission of evidence independently obtained by both legal and illegal means, so long as the legally obtained discovery was in fact wholly independent of any constitutional violation. *See, e.g., Warner*, 125 Wn.2d at 888-89; *see also State v. Ludvik*, 40 Wn. App. 257, 263, 698 P.2d 1064 (1985); *State v. O'Bremski*, 70 Wn.2d 425, 429, 423 P.2d 530 (1967). Although these cases rely on federal court precedent, the *Ludvik* court observed that the independent source doctrine is consistent with article I, section 7. *Ludvik*, 40 Wn. App. at 263. The similarity between the independent source doctrine and

the inevitable discovery rule was remarked by the Supreme
Court in *Nix v. Williams*:

> The independent source doctrine teaches us that the interest
> of society in deterring unlawful police conduct and the public
> interest in having juries receive all probative evidence of a
> crime are properly balanced by putting the police in the same,
> not a *worse*, position that they would have been in if no police
> error or misconduct had occurred. When the challenged evi-
> dence has an independent source, exclusion of such evidence
> would put the police in a worse position than they would
> have been in absent any error or violation. There is a
> functional similarity between these two doctrines in that
> exclusion of evidence that would inevitably have been
> discovered would also put the government in a worse posi-
> tion, because the police would have obtained that evidence if
> no misconduct had taken place.

467 U.S. at 443-44 (citations omitted).

██ Under Fourth Amendment deterrence analysis,
therefore, the purpose of the exclusionary rule is not
served by excluding evidence which would have been inev-
itably discovered. It has been argued that the exclusion-
ary rule in Washington has a purpose beyond deterrence:
to protect individual rights, rather than to curb govern-
mental action. *See* Robert F. Utter, *Survey of Washington
Search and Seizure Law: 1988 Update*, 11 U. PUGET SOUND
L. REV. 411, 591-92 (1988). *See also State v. White*, 97
Wn.2d 92, 110-12, 640 P.2d 1061 (1982); *but see id.* at 117
(Hicks, J., dissenting). But we can see no jeopardy to indi-
vidual rights in the inevitable discovery doctrine, because
central to the doctrine is the concept that the *same* evi-
dence would have been eventually gathered by constitu-
tionally permissible means. We see no principled difference
between the inevitable discovery rule and the independent
source doctrine.

Finally, as the *Nix* court noted, the inevitable discovery
doctrine is akin to the harmless error doctrine. *See Nix*,
467 U.S. at 443-44. It has long been established that even
manifest constitutional error committed at trial can be

harmless. *See, e.g., Russell,* 125 Wn.2d at 93-94. Trial errors implicate not just privacy rights but the integrity of the truth-finding process, and therefore we impose a more stringent test,[5] but the question in each instance is similar: Would the outcome have been the same? If the answer is yes, it defies logic and common sense to exclude evidence and place the police in a worse position than if no misconduct had taken place.

We believe that the rule as set forth by the federal courts, by Justice Dolliver in his *Broadnax* dissent, and as adopted by this court in *White,* contains adequate safeguards to ensure that police misconduct does not erode the privacy protections provided by article 1, section 7. The rule authorizes admission of unlawfully obtained evidence only when the State can prove that the evidence would have been inevitably discovered under proper and predictable investigatory procedures. *See White,* 76 Wn. App. at 809. The State must prove this inevitability by a preponderance of the evidence. *Warner,* 125 Wn.2d at 889. Thus, the rule allows neither speculation as to whether the evidence would have been discovered, nor speculation as to how it would have been discovered. The State must also prove that the police did not act unreasonably or in an attempt to accelerate discovery. *See White,* 76 Wn. App. at 809. For example, police may not rely on the inevitable discovery doctrine and fail to secure proper search warrants. Therefore, the rule addresses Richman's fear that the police will purposefully ignore proper investigatory procedures.

Moreover, an evaluation of the reasonableness of the officer's actions necessarily includes consideration of the nature of the privacy interest and the degree of its invasion. It is this feature of the rule that particularly addresses our enhanced privacy concerns. Under article I, section 7, determining whether a particular privacy inter-

---

[5]Manifest constitutional error at trial is harmless only when the State proves *beyond a reasonable doubt* that the outcome was not affected by the error. *See, e.g., Russell,* 125 Wn.2d at 94.

est was unduly invaded requires consideration of whether the privacy expectation is objectively reasonable, and also whether it is one that has been traditionally held. *See State v. Myrick*, 102 Wn.2d 506, 510-11, 688 P.2d 151 (1984); *State v. Faford*, 128 Wn.2d 476, 484-85, 910 P.2d 447 (1996). Thus, by analyzing the reasonableness of the officer's actions in light of the privacy interest at stake, courts can ensure that application of the inevitable discovery doctrine does not erode the protections of article I, section 7. Given these safeguards in the rule itself, the doctrine of inevitable discovery does not offend article I, section 7.

## Application of the Doctrine

We must thus determine whether the court erred in applying the rule here. The first question is whether Farwell acted reasonably in light of Richman's interest in the privacy of his briefcase. *See White*, 76 Wn. App. at 809. It is self-evident that the security of a citizen's briefcase is a traditionally held privacy interest. Such interests are not absolute, however, but yield to concerns of officer safety when the officer has probable cause to make an arrest. *See State v. Stroud*, 106 Wn.2d 144, 152, 720 P.2d 436 (1986). Thus, officers can lawfully search objects within the control and reach of an arrestee immediately before, or at the moment of, the arrest. *State v. Smith*, 119 Wn.2d 675, 682-83, 835 P.2d 1025 (1992);[6] *Johnson*, 128 Wn.2d at 447. Probable cause to make an arrest requires a reasonable ground for suspicion, supported by circumstances sufficiently strong to warrant a cautious individual in believing the suspect to be guilty. *State v. Scott*, 93 Wn.2d 7, 10-11, 604 P.2d 943 (1980).

Here, the court found that Richman was disrobing and displaying several stolen items as Farwell entered the of-

---

[6]*Smith* was decided solely under the Fourth Amendment. *See Smith*, 119 Wn.2d at 678 n.2. Richman has not argued that article 1, section 7 should provide a more restrictive rule governing the applicable search area for a search incident to an arrest.

fice. The court orally found that Boudra's testimony regarding the sequence of events was particularly credible, that Boudra immediately informed Farwell that Richman had stolen the merchandise, and that these circumstances provided probable cause.[7] Boudra testified that the briefcase was not opened until 10 minutes after Farwell arrived. Thus, by the time the briefcase was searched, Richman's privacy interest had been superseded by the search incident to arrest exception to the warrant requirement. *See Johnson*, 128 Wn.2d at 447.

Richman nevertheless argues that the inevitable discovery rule is inapplicable because the State did not prove that Richman would have been arrested absent the search or that the briefcase was within the scope of a valid search incident to arrest. We find that the evidence establishes that the briefcase would more likely than not have been lawfully searched incident to arrest.

Farwell testified that Richman was not free to leave once Farwell heard Boudra's accusation, which was made while Farwell was entering the office and while Richman was disrobing and displaying stolen items. Under the circumstances, Richman's arrest was a certainty. Moreover, Farwell testified that for officer safety he routinely searches containers such as briefcases and duffel bags found on an arrestee. Richman's briefcase was in his possession immediately before he was apprehended, and there was no evidence that Boudra or the attendant thereafter confiscated the briefcase. Consequently, the State proved by a preponderance of the evidence that the briefcase was in Richman's possession immediately before its search. *See Smith*, 119 Wn.2d at 682-83.

Thus, the State established that the officer did not act unreasonably or to accelerate discovery, and that proper investigatory procedures would inevitably have resulted

---

[7]We consider the court's oral ruling here because it clarifies the written ruling. *See State v. Bryant*, 78 Wn. App. 805, 812-13, 901 P.2d 1046 (1995). And because Richman does not challenge the court's written findings that Farwell arrived in the office as Richman was disrobing and exposing the stolen items, we treat these findings as verities on appeal. *See Hendrickson*, 129 Wn.2d at 71-72.

in discovery of the evidence. We therefore affirm the trial court's ruling that the evidence was admissible under the inevitable discovery rule.

Affirmed.

The remainder of this opinion has no precedential value and therefore will not be published. *See* RCW 2.06.040; RAP 10.4(h).

WEBSTER and COX, JJ., concur.

Review denied at 133 Wn.2d 1028 (1997).