115 P.3d 1052 (2005)
STATE of Washington, Respondent,
v.
Frank Tyler SPRING, Appellant.
No. 53487-4-I.
The Court of Appeals of Washington, Division One.
July 18, 2005.
*1053 William Johnston, Bellingham, WA, for Appellant.
Philip J. Buri, Special Deputy Prosecutor, Whatcom County Prosecutor's Office, Bellingham, WA, for Respondent.

PUBLISHED IN PART
ELLINGTON, A.C.J.
¶ 1 An unlawful entry by police does not invalidate a subsequent search warrant so long as the unlawful entry did not prompt the decision to seek the warrant, and lawfully obtained evidence established probable cause. Here, lawfully obtained evidence supported the warrant. But the court did not determine whether the officers' decision to seek the warrant was prompted by the previous unlawful entry. We therefore remand.

Suppression Hearing Facts
¶ 2 On April 10, 2003, housekeepers at a motel in Ferndale discovered what appeared to be an active methamphetamine lab in one of the rooms. The room was full of smoke and had a strong chemical odor. The housekeepers observed tubes, acetone, packages of Sudafed, and a propane torch in the room. The head housekeeper reported these observations to the police.
¶ 3 When police arrived, they were told the room was rented to a man named Frank Spring. A pickup truck was parked near the room, and its license number matched the license number on the room rental receipt. A man was standing next to the truck. He was extremely nervous. His hands and feet were constantly moving, he could not maintain eye contact, and his eyes were blinking rapidly. The officers proceeded to question the man, later identified as Frank Spring, and ultimately handcuffed him. They did not read him Miranda[1] rights.
¶ 4 Witnesses disagreed as to the order of the questions and the point during questioning when Spring was handcuffed. According to Spring, police asked his name and then asked him to stick out his tongue. They then asked him when he had last "used" and Spring said "last night."[2] The officers then handcuffed him before resuming questioning.
¶ 5 According to Sergeant Kevin Hester's incident report, Spring was handcuffed after identifying himself and sticking out his tongue. Spring then admitted renting a room, stated that someone else was currently inside "cooking meth,"[3] and consented to a search of the room. Hester testified that his report was not in chronological order, and that Spring was handcuffed "some time"[4] during the initial conversation with police. Detective Bryan Collins recalled a different sequence of questions and testified that Spring was not handcuffed until the questioning was complete.
¶ 6 After obtaining Spring's consent to search, the officers approached the room. They could smell "chemical odors"[5] even before they entered. Once inside, they confirmed *1054 the presence of a methamphetamine lab and found a man, later identified as Kyle Lisneski, in the bathroom wearing a fire retardant suit. They then secured the room. The search took approximately 10 seconds.
¶ 7 The officers returned to Spring, read him his rights, and questioned him further. Spring claimed he rented the room for a man he had just met named Kyle. He admitted entering the room on that morning and seeing Kyle cooking methamphetamine. He also admitted purchasing Sudafed tablets and driving Kyle to several stores. The officers searched Spring and obtained his consent to search his truck. They later sought a telephonic warrant to search the motel room, informing the magistrate of the housekeepers' and the officers' observations. Relying in part on the results of the consent search, the magistrate found probable cause to issue the warrant to search the room. Based on the results of the searches of Spring's room and truck, Spring was charged with manufacturing methamphetamine.
¶ 8 Prior to trial, Spring moved to suppress his statements and the evidence taken from both his room and his truck. The court ruled that the consent search of the room was unlawful because Spring gave consent after he was handcuffed and before Miranda warnings. Although the court agreed the search warrant was tainted to the extent it was based on information obtained in the consent search, the court concluded that the untainted evidence before the magistrate was sufficient by itself to support probable cause, and that the warrant and second search were therefore valid.
¶ 9 The court found that Spring was not handcuffed until after he gave his name, stuck out his tongue, admitted renting the room and using methamphetamine, and admitted that someone was manufacturing methamphetamine in the room. The court admitted those statements, but suppressed all of the statements Spring made after his handcuffing, including his consent to search and his admissions following the search. A jury convicted Spring as charged.

DECISION
¶ 10 The principal issue before us is whether the superior court erred in denying Spring's motion to suppress evidence discovered during the execution of the search warrant.[6] Spring contends the search warrant and the search of his room were invalid under the United States Supreme Court's decision in Murray v. United States.[7]
¶ 11 In Murray, federal agents surveilling a warehouse saw two trucks leave the warehouse. The trucks were seized and found to contain marijuana. Agents then entered the warehouse illegally and discovered marijuana inside. The agents then applied for a search warrant for the warehouse, but did not mention the illegal entry or any observations they made inside the warehouse. Addressing the validity of the warrant, the court stated:
The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.[8]
Murray thus requires separate inquiries into the effect of illegally obtained information upon the officer's decision to seek the warrant, and the magistrate's decision to issue it. The trial court in Murray had addressed only the magistrate's decision, and the Supreme Court therefore remanded for findings as to whether "the agents would have sought a warrant if they had not earlier entered the warehouse."[9]
*1055 ¶ 12 Spring contends that the decisions to seek and to issue the warrant both were based in part on unlawfully obtained evidence.
¶ 13 We first consider the magistrate's decision to issue the warrant. The Washington Supreme Court held in State v. Maxwell[10] that when a search warrant is based in part on illegally obtained information, the warrant is nonetheless valid if the warrant application contains "otherwise sufficient facts to establish probable cause independent of the illegally obtained information." The Maxwell holding derives from Franks v. Delaware,[11] a pre-Murray decision in which the United States Supreme Court held that a warrant containing false information is valid so long as the remaining information establishes probable cause.[12]
¶ 14 The vast majority of courts have concluded that Murray did not alter the principles applied in Franks.[13] The reasoning in State v. Chaney[14] is representative:
If viewed in isolation from the rest of the Court's opinion and prior case law, the ["affected his decision to issue the warrant"] passage from Murray could be read to support the trial court's decision. However, this part of Murray is dictum because the warrant affidavit involved in that case did not set forth the police officers' observations during an earlier warrantless entry into the searched premises. Thus, it was clear in Murray that an earlier unlawful search did not affect the judge's decision to issue the warrant, and the Court had no occasion to consider whether the warrant would have been invalid if the supporting affidavit had included unlawfully obtained information. Moreover, the Court in Murray did not even mention . . . Franks or the line of lower court decisions which have held that a search warrant issued on the basis of an affidavit containing unlawfully obtained information may be valid if the affidavit also contains other lawfully obtained information which establishes the probable cause required for the search. Consequently, it seems unlikely that the Court in Murray intended to change this well established law.
In addition, just two sentences before the passage in Murray relied upon by the trial court, the Court stated that "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it otherwise would have occupied." If the inclusion in a warrant affidavit of unlawfully obtained information automatically required suppression of the evidence obtained in a search under the warrant even though other untainted information in the affidavit established probable cause, the government clearly would be placed in a "worse position" than if it had not engaged in a prior unlawful search. Therefore, the trial court's expansive reading of the dictum in Murray is inconsistent with the overall tenor of the opinion and with prior case law.[[15]]
This reading of Murray is supported by the rationale of Murray itself, and by the fact that Murray does not mention or purport to overrule Franks. We are persuaded that the majority view is correct. Applying the principles in Franks and Maxwell to this case, the warrant was valid if the lawfully obtained evidence in the warrant application supported probable cause to search. The application recited the housekeepers' observations during their lawful entry,[16] the officers' observations *1056 of Spring, and Spring's initial statements to police. This lawfully obtained information amply supported the warrant.
¶ 15 Turning to the second inquiry, courts generally have required the government to show that officers would have sought the warrant in the absence of the unlawfully obtained evidence.[17] Often, the result on appeal has been a remand for entry of findings on this point.[18]
¶ 16 Such is the case here. The supervisor of the investigation, Sergeant Hester, testified that his initial inclination following the report from the motel was to get more information about what the employee had seen in the motel room, who had rented the room, and what vehicle was registered to the room. The plan was "to go speak with the employee of the motel and ascertain further what she had seen and then attempt to apply for a search warrant for the room based on what she had seen and what her observations were."[19]
¶ 17 This plan changed when officers discovered Spring in the parking lot. At that point, an exigency existed, and Hester decided to contact Spring. After speaking with Spring, the exigency increased, because it appeared there was an active and potentially volatile lab in the room.[20] The officers then decided to enter the room, "did a quick sweep to check for other people and then exited the room."[21] They were inside for 10 seconds.
¶ 18 We see nothing in the record suggesting that the officers were prompted to obtain a warrant by their sweep of the motel room. But in one of the cases cited in Murray, the circuit court had ruled:
"This is as clear a case as can be imagined where the discovery of the contraband in plain view was totally irrelevant to the later securing of a warrant. . . . As there was no causal link whatever between the illegal entry and the discovery of the challenged evidence, we find no error in the court's refusal to suppress."[[22]]
The Supreme Court rejected this approach, holding that "it is the function of the District Court rather than the Court of Appeals to determine the facts."[23] We must therefore remand.[24]
¶ 19 Spring also contends that the Franks test for determining the validity of a warrant does not adequately protect his privacy rights under the Washington Constitution. We generally will not consider a state constitutional argument absent analysis of the factors identified in State v. Gunwall.[25] Spring's brief provides neither discussion of Gunwall nor meaningful analysis. Spring mentions Gunwall in his pro se statement of additional grounds for review, but his treatment of the issue is inadequate.[26] We therefore decline to address this argument.
*1057 ¶ 20 In the unpublished portion of this opinion, we reject Spring's other arguments on appeal. We therefore remand for further proceedings in accordance with this opinion.
¶ 21 The balance of this opinion having no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.
WE CONCUR: APPELWICK and KENNEDY, JJ.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Report of Proceedings (RP) (Sept. 30, 2003) at 102.
[3] Clerk's Papers at 105.
[4] RP (Sept. 30, 2003) at 78.
[5] RP (Sept. 30, 2003) at 75.
[6] We review the trial court's findings of fact for substantial evidence and its conclusions of law de novo. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).
[7] 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).
[8] Id. at 542, 108 S.Ct. 2529 (footnote omitted).
[9] Id. at 543, 108 S.Ct. 2529.
[10] 114 Wash.2d 761, 769, 791 P.2d 223 (1990).
[11] 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
[12] Maxwell, 114 Wash.2d at 769, 791 P.2d 223 (citing State v. Coates, 107 Wash.2d 882, 888, 735 P.2d 64 (1987) (relying on Franks)).
[13] United States v. Jenkins, 396 F.3d 751, 758-59 (6th Cir. 2005) (federal circuits considering the issue unanimously agree that Murray does not alter Franks); Williams v. State, 372 Md. 386, 813 A.2d 231 (2002) (citing federal and state cases); People v. Weiss, 20 Cal.4th 1073, 86 Cal.Rptr.2d 337, 978 P.2d 1257, 1261-63 (1999) (same).
[14] 318 N.J.Super. 217, 723 A.2d 132 (1999).
[15] Id. at 135-36 (emphasis added) (citations omitted).
[16] The housekeepers were named citizen informants, and are presumed reliable. State v. Wible, 113 Wash.App. 18, 24, 51 P.3d 830 (2002).
[17] State v. Hall, 53 Wash.App. 296, 766 P.2d 512 (1989); United States v. Hill, 55 F.3d 479, 481 (9th Cir.1995) (court must explicitly find that officers would have sought a warrant if they had not earlier entered defendant's house) (quoting Murray, 487 U.S. at 543, 108 S.Ct. 2529).
[18] See United States v. Restrepo, 966 F.2d 964, 972 (5th Cir. 1992); United States v. Bosse, 898 F.2d 113, 116 (9th Cir. 1990) (remanding to determine effect of illegal entry and search on officers' decision to seek warrant); State v. Winkler, 552 N.W.2d 347, 354 (N.D. 1996) (remanding to trial court on the question of motivation).
[19] RP (Sept. 30, 2003) at 64 (emphasis added).
[20] Hester testified that the exigency increased because there was "possibly an active lab going on here which needs to be controlled before it gets to a stage where it could become explosive and/or violent as far as fire, explosion, and that type of thing." Id. at 70.
[21] RP (Sept. 30, 2003) at 20.
[22] Murray, 487 U.S. at 543, 108 S.Ct. 2529 (quoting United States v. Moscatiello, 771 F.2d 589, 604 (1st Cir. 1985)).
[23] Id.
[24] Spring contends he is entitled to a new evidentiary hearing on this issue. We leave this question to the trial court.
[25] 106 Wash.2d 54, 61-62, 720 P.2d 808 (1986); see also State v. Clark, 68 Wash.App. 592, 601, 844 P.2d 1029 (1993), aff'd, 124 Wash.2d 90, 875 P.2d 613 (1994) (absent adequate Gunwall analysis, court will not consider argument that state constitution provided more protection against omissions in search warrant affidavits than that provided by Fourth Amendment as interpreted in Franks).
[26] The essence of Spring's argument (that the trial court's "redaction approach" fails to adequately protect privacy interests under the state constitution) was rejected in State v. Ludvik, 40 Wash.App. 257, 263-64, 698 P.2d 1064 (1985). This court subsequently relied on Ludvik in State v. Richman, 85 Wash.App. 568, 575-78, 933 P.2d 1088 (1997), holding that the inevitable discovery rule is consistent with article I, section 7 of the Washington Constitution. We noted that there was "no principled difference between the inevitable discovery rule and the independent source doctrine." Richman, 85 Wash.App. at 576, 933 P.2d 1088. Division Three recently cited Richman and Ludvik for the proposition that "the independent source doctrine, like the inevitable discovery doctrine, does not offend the protections of article 1, section 7." State v. Smith, 113 Wash.App. 846, 856, 55 P.3d 686 (2002) (citing Richman, 85 Wash.App. at 576-77, 933 P.2d 1088; Ludvik, 40 Wash.App. at 263, 698 P.2d 1064), review denied, 149 Wash.2d 1014, 69 P.3d 876 (2003). Spring fails to address any of these cases.