# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54494-6-II |
| Respondent, | |
| v. | |
| JAMES LEE MILLER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — James L. Miller appeals his convictions for first degree rape of a child and first degree child molestation. Miller argues that the trial court erred when it denied his CrR 3.6 motion to suppress evidence because law enforcement conducted a warrantless search.

We hold that the trial court did not err in denying Miller's CrR 3.6 suppression motion because the State did not conduct a warrantless search. Accordingly, we affirm Miller's convictions for first degree rape of a child and first degree child molestation.

FACTS[1]

On June 23, 2019, Jennifer Miller[2] made a report to law enforcement that Miller had been sexually abusing her daughter, M.R. Detective Steve Beck of the Grays Harbor County Sheriff's Office was assigned to investigate the case. During the course of his investigation, Detective Beck

---

[1] The following facts rely in part on the trial court's CrR 3.6 findings of fact, which are, with the exception of finding of fact 15 and 16, unchallenged and, therefore, are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

[2] Because Jennifer Miller has the same last name as the appellant, we will refer to her by her first name and appellant by his last name for clarity. No disrespect is intended.

learned that Miller was also being investigated for failing to register as a sex offender for a previous conviction and had a warrant issued for his arrest.

On July 18, Jennifer contacted Detective Beck and advised that she had a current GPS location on Miller. Jennifer had Miller's GPS location from the shared cellphone plan she had with Miller, which allowed her to see where Miller was in real-time through her cellphone. Detective Beck advised that he would contact Jennifer the next day for an updated location.

On July 19, Detective Beck contacted Jennifer. Jennifer advised that she believed Miller was at a dentist's office in Puyallup, Washington; Jennifer kept Detective Beck updated as to Miller's location. Detective Beck drove from Montesano, Washington, to Miller's location in Puyallup.

Detective Beck found Miller in Puyallup and took Miller into custody. Detective Beck read Miller his *Miranda*[3] rights, which Miller stated that he understood. Miller was then transported from Puyallup to the Grays Harbor County Sheriff's Office.

Back at the sheriff's office in Grays Harbor, Detective Beck re-read Miller his *Miranda* rights, and Miller again stated that he understood. Detective Beck testified that Miller admitted to touching M.R. three separate times:

> Q. Okay. And what—what specific admissions does he make about what kind of touching?
> A. To my best recollection he told me that he touched her three times, the first one was touching just on the outside of her vagina, the second time he said he penetrated her with his index finger, and the third time he touched her vagina as well.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Verbatim Report of Proceedings (VRP) (Dec. 17, 2019) at 158.

A.    CrR 3.6 SUPPRESSION HEARING

Miller moved to suppress evidence of his arrest and his subsequent statements to Detective

Beck pursuant to CrR 3.5 and 3.6.  Miller argued that Detective Beck's reliance on Jennifer's

updates regarding his GPS location constituted an unlawful search.  The State argued that

Jennifer's sharing Miller's GPS location with Detective Beck did not constitute State action, and

therefore, no unlawful search occurred and no warrant was required.

Detective Beck was the only witness to testify at the suppression hearing.  Detective Beck

testified that he asked Jennifer if she knew where Miller was.  Detective Beck also testified that

"[Jennifer] had GPS location on [Miller], since she explained to me they shared the same cell

phone plan still.  It was on Google.  I guess that she was able to track him."  VRP (Nov. 19, 2019)

at 18.  Jennifer's information allowed Detective Beck to locate Miller in Puyallup.

The trial court agreed with the State and denied Miller's motion to suppress.  The trial court

entered the following relevant findings:

**14.**

    With regard to the illegal search issue, the facts are undisputed that after
Detective Beck had sufficient information and probable cause to arrest the
Defendant, he went looking to arrest the Defendant.  The Defendant's wife, Ms.
Miller, told Detective Beck that she always knew where he was because of the GPS
access on her phone.  The Defendant's wife gave Detective Beck information that
the Defendant was at the dentist in Puyallup and updated him on the Defendant's
movements.

**15.**

    In both U.S. and Washington courts, the use of a GPS device is a search and
requires a warrant.  However, this was not a GPS device that Detective Beck had

and there was no tracking [device] placed on the Defendant's vehicle. The GPS information was on Ms. Miller's device.

### 16.

In order for a warrant to be required, there must be state action. Detective Beck was not employing the GPS device, but rather using information voluntarily provided by Ms. Miller.

Clerk's Papers (CP) at 61-62. The trial court also entered the following relevant conclusion of law:

### 12.

With regard to the use of GPS information, there was no state action. Therefore, there was no warrant requirement. The Defendant's motion to suppress the Defendant's statements under CrR 3.6 is denied.

CP at 63.

B.    TRIAL, VERDICT, & SENTENCING

Miller waived his right to a jury, and the trial court held a bench trial. Witnesses testified consistent with the facts above. The trial court found Miller guilty of first degree rape of a child and first degree child molestation.

At the sentencing hearing, the parties agreed that Miller faced a sentence of life without the possibility of parole because he is a persistent offender. The State presented a certified copy of Miller's judgment and sentence for a 1995 conviction of second degree rape of a child. The trial court sentenced Miller to life in prison without the possibility of parole.

Miller appeals.

ANALYSIS

Miller argues that the trial court erred in denying his CrR 3.6 suppression motion because his cellphone location data was obtained without a warrant "in violation of [his] rights under the Fourth Amendment and article I, section 7 of the Washington Constitution." Br. of Appellant at 1. Miller further argues that the statements he made following his arrest must also be suppressed because they were obtained after he was located using cellphone location data that was obtained without a warrant. Because Miller's location information was obtained by a private actor, which does not trigger warrant requirements under either the state or federal constitutions, we disagree.

A.    LEGAL PRINCIPLES

We review a trial court's decision on a CrR 3.6 motion to suppress to determine whether the court's findings of fact are supported by substantial evidence and whether those findings support the conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). We review conclusions of law de novo. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

Warrantless searches and seizures are per se unreasonable and in violation of the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington State Constitution. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). Generally, "neither state nor federal constitutional protections against unreasonable searches and seizures are implicated[] without state action." *State v. Carter,* 151 Wn.2d 118, 124, 85 P.3d 887 (2004). Thus, the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington

Constitution only apply to searches by state actors, not those of private actors. *See Id.* However, state and federal constitutional protections may apply "if the private person functions as an agent or instrumentality of the State." *State v. Clark,* 48 Wn. App 850, 855-56, 743 P.2d 822, *review denied*, 109 Wn.2d 1015 (1987). In other words, "law enforcement officers cannot use private citizens to obtain evidence without a search warrant where a search warrant would otherwise be required." *State v. Swenson,* 104 Wn. App. 744, 754, 9 P.3d 933 (2000), *cert. denied*, 546 U.S. 983 (2005). The defendant bears the burden to show that a private citizen was acting as a government agent. *Id.*

Whether a person is acting as a State agent depends on the particular facts. *Clark,* 48 Wn. App. at 856. The government must be directly involved in the search or indirectly involved as an encourager or instigator of the private person's actions. *Id.* A private citizen acts as an agent of the State where the State has in some way "instigated, encouraged, counseled, directed, or controlled" the actions of that individual. *State v. Agee,* 15 Wn. App. 709, 713-14, 552 P.2d 1084 (1976), *aff'd,* 89 Wn.2d 416 (1977).

Two key considerations in the "State agent" analysis are (1) whether the government was aware of and acquiesced in the intrusive conduct and (2) whether the private citizen intended to assist law enforcement or further the private citizen's own ends. *Clark,* 48 Wn. App. at 856. However, "a mere purpose to aid the government does not transform an otherwise private search into a governmental search." *State v. Ludvik,* 40 Wn. App. 257, 263, 698 P.2d 1064 (1985). And "'[m]ere knowledge by the government that a private citizen might conduct an illegal private search without the government taking any deterrent action [is] insufficient to turn the private search

into a governmental one.'" *Swenson*, 104 Wn. App. at 755 (quoting *State v. Smith*, 110 Wn.2d 658, 666, 756 P.2d 722 (1988)).

The exclusionary rule requires suppression of all evidence obtained pursuant to a person's unlawful search or seizure. *State v. Winterstein*, 167 Wn.2d 620, 632-33, 220 P.3d 1226 (2009). But the "[c]onstitutional guaranties against unreasonable searches and seizures protect only against governmental actions and do not require the application of the exclusionary rule to evidence obtained from private citizens acting on their own initiative." *Ludvik,* 40 Wn. App. at 262.

B.    THE TRIAL COURT DID NOT ERR IN DENYING MILLER'S SUPPRESSION MOTION

Miller argues that the trial court erred in its finding of fact 15 that "'this was not a GPS device that Detective Beck had'" and its finding of fact 16 that "'Detective Beck was not employing the GPS device.'" Br. of Appellant at 1 (quoting CP at 62). We disagree.

Here, Detective Beck testified that "[Jennifer] had GPS location on [Miller], since she explained to me they shared the same cell phone plan." VRP (Nov. 19, 2019) at 18. Detective Beck also testified that the cellphone plan that Miller shared with Jennifer allowed Jennifer to see Miller's GPS location data through Google, which explained how "she was able to track him." VRP (Nov. 19, 2019) at 18. Thus, Jennifer located Miller on her phone based on the shared cell phone plan she had with Miller. The evidence is sufficient to persuade a fair-minded, rational person that the GPS locator was on Jennifer's cellphone and not a device that Detective Beck had in his possession. Therefore, substantial evidence supports the trial court's findings of fact 15 and 16.

Next, Miller argues that "[t]he trial court erred entering Conclusion of Law 12 that the use of GPS information did not constitute a State action and that there was therefore no requirement for the State to obtain a warrant." Br. of Appellant at 1. We disagree.

Here, unchallenged finding of fact 14 shows that Jennifer, on her own initiative, provided the information on Miller's location to Detective Beck. Detective Beck did not instigate, encourage, counsel, or direct Jennifer to turn over Miller's GPS coordinates from her cellphone. Although Jennifer assisted law enforcement, merely aiding the government is not enough to turn an otherwise private search into a government search. *See Clark,* 48 Wn. App. at 856; *Ludvik,* 40 Wn. App. at 263. Under the facts of this case, the trial court did not err in concluding that Detective Beck's use of Jennifer's GPS information did not constitute State action. Because there was no State action involved, no warrant was required.

Also, because there was no State action, neither the state nor federal constitutional protections against unreasonable searches are implicated here. *See Carter,* 151 Wn.2d at 124. Therefore, Miller's GPS location data and statements obtained following his arrest are not subject to suppression under the exclusionary rule. *See Ludvik,* 40 Wn. App. at 262. Accordingly, we affirm the trial court's denial of Miller's CrR 3.6 suppression motion and his convictions for first degree rape of a child and child molestation.

No. 54494-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Maxa, J.

_____
Sutton, J.