[No. 22766-5-II.   Division Two.   January 21, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. TOMAS Z. REYES, *Appellant*.

---

[10]*Id.* at 439.

*Linda Jeanne Whitt* of *Whitt & Associates*, for appellant.

*Ed Holm, Prosecuting Attorney*, and *William J. Halstead, Deputy*, for respondent.

SEINFELD, J. — Tomas Z. Reyes appeals his conviction for unlawful possession of a controlled substance. The trial court admitted the drug evidence obtained from Reyes' person pursuant to an illegal search, relying on the inevitable discovery rule. Because the State failed to produce sufficient evidence of the reasonableness of the officer's actions and the inevitability of the discovery, we reverse.

## FACTS

The State charged Reyes with the unlawful possession of a controlled substance, cocaine, RCW 69.50.401(d). Follow-

ing a CrR 3.6 suppression hearing, the trial court entered findings, summarized below.

Based upon information from several known drug users, other contacts, and their own personal observations, City of Olympia police officers Beckwell and Jelcick believed that restaurant owner Reyes and his employees might be conducting narcotics transactions in the restaurant's kitchen, which is accessible through an alleyway door. Acting on this information, the officers observed the restaurant from across the street one evening.

Although neither officer could see the kitchen's alley door from their vantage point, they did see some men who appeared to use that access to enter and leave the kitchen in a manner consistent with the drug dealing reports. They also saw one of Reyes' employees peer from a restaurant window as if acting as a lookout. Then the officers saw Reyes and another man close the restaurant and get into an automobile; Reyes sat in the driver's seat. At that time, the officers knew Reyes had a suspended driver's license.

The officers radioed dispatch and asked for a license check on Reyes' vehicle, and then they approached Reyes to talk about his suspended license and the suspected drug activity at the restaurant. The car's engine was not running. As the officers approached, Reyes exited the vehicle and walked toward them.

After exchanging greetings and a bit of small talk, Beckwell asked Reyes if he had any weapons or narcotics on his person. When Reyes stated that he did not, Beckwell asked Reyes if he could search him "for weapons or narcotics." Reyes consented.

Beckwell said he based his search on his training and experience, which indicated to him that drug users regularly carry weapons. Beckwell explained that when contacting people in connection with narcotics trafficking he regularly asks those people for permission to search them for weapons because of safety concerns and for drugs.

During the search, Beckwell found a small plastic bindle in Reyes' right front change pocket containing a white

powder substance that a later laboratory test confirmed to be cocaine. Beckwell then arrested Reyes but did not advise him of his *Miranda*[1] rights at that time. Following the arrest, dispatch informed the officers that there was an outstanding warrant for Reyes in Thurston County.

At the CrR 3.6 hearing, the State did not contend that the officers had conducted a valid *Terry* search.[2] Rather, it argued that Reyes had consented to the search and that, in any event, discovery of the drugs was inevitable given that the officers soon learned of the outstanding warrant.

The trial court ruled that the search exceeded the permissible scope of a *Terry* stop because the officers did not limit their search to weapons. It further found that the State had failed to show that Reyes had voluntarily consented to the search. However, citing *State v. White*, 76 Wn. App. 801, 809, 888 P.2d 169 (1995), *aff'd*, 129 Wn.2d 105, 915 P.2d 1099 (1996), the court concluded that the discovery of the drug evidence was inevitable. Thus, it denied the motion to suppress and subsequently found Reyes guilty following a bench trial on stipulated facts. Reyes now appeals.

### INEVITABLE DISCOVERY RULE

The State concedes that the seizure of the cocaine from Reyes was illegal. Thus, our application of the inevitable discovery rule is dispositive.

Reyes, citing *State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808, 76 A.L.R.4TH 517 (1986), argues that the Washington Constitution requires that the State prove the applicability of the inevitable discovery doctrine by clear and convincing evidence. The State, relying on *State v. Richman*, 85 Wn. App. 568, 933 P.2d 1088, *review denied*, 133 Wn.2d 1028 (1997), contends that the State need produce only a preponderance of evidence. We agree.

A review of the inevitable discovery rule's history aids in

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 445, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966).

[2]*Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

understanding the proper burden of proof and in applying it to the facts. Seventeen years ago, Justice Dolliver, in a dissenting opinion, proposed that Washington adopt the inevitable discovery rule. *State v. Broadnax*, 98 Wn.2d 289, 309, 654 P.2d 96 (1982). Justice Dolliver proposed that the court apply the rule only where the State has satisfied the following three-part test: "(1) The police did not act unreasonably or to accelerate the discovery of the evidence in question; (2) proper and predictable investigatory procedures would have been utilized; and (3) those procedures would have inevitably resulted in the discovery of the evidence in question." *Id.* at 309 (Dolliver, J., dissenting).

Two years later, the United States Supreme Court adopted the inevitable discovery rule in *Nix v. Williams*, 467 U.S. 431, 444, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). The *Nix* Court simply held that the inevitable discovery rule applies if the "prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." 467 U.S. at 444.

Division One of this court adopted the rule as set forth in *Nix* but also added Justice Dolliver's three-part *Broadnax* test. *White*, 76 Wn. App. at 808-09.[3] The section in *White* relating to inevitable discovery is dicta; the *White* court had already determined the challenged search to be valid under the Fourth Amendment,[4] and then added that had the search been unreasonable, the evidence would have been admissible under the inevitable discovery doctrine. 76 Wn. App. at 808.

Seventeen days after Division One decided *White*, the Washington Supreme Court also adopted the *Nix* rule but,

---

[3]In affirming *White*, the Supreme Court declined to discuss whether inevitable discovery applied. 129 Wn.2d at 113.

[4]"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

in contrast to *White*, did not adopt the *Broadnax* criteria. *State v. Warner*, 125 Wn.2d 876, 889, 889 P.2d 479 (1995). *Warner* also adopted the preponderance standard set forth in *Nix*. *Id*. at 889. The *Warner* court added: "Absolute inevitability of discovery is not required but simply a reasonable probability that evidence in question would have been discovered other than from the tainted source." 125 Wn.2d at 889 (citing *United States v. Brookins*, 614 F.2d 1037 (5th Cir. 1980)).

Division One recently revisited the inevitable discovery rule, applied the six *Gunwall* factors, and concluded that it was appropriate to conduct an independent state constitutional analysis. *Richman*, 85 Wn. App. at 573-74. The *Richman* court then found the inevitable discovery doctrine valid under article I, section 7 of the Washington State Constitution.[5] *Richman*, 85 Wn. App. at 578. The *Richman* court noted that the *Warner* court adopted the inevitable discovery rule pursuant to federal case law only, *Warner*, 125 Wn.2d at 889, but doubted that "the *Warner* court would have so sanctioned the rule if it perceived state constitutional defects." *Richman*, 85 Wn. App. at 574 n.4.

In arriving at its holding, the *Richman* court, citing *Nix*, 467 U.S. at 443-44, noted the strong similarity between the independent source doctrine and the inevitable discovery rule. 85 Wn. App. at 575-76. The *Richman* court also observed that the independent source doctrine, as articulated by the federal courts, is consistent with article I, section 7. 85 Wn. App. at 575; *see also State v. Ludvik*, 40 Wn. App. 257, 263, 698 P.2d 1064 (1985). Consequently, the *Richman* court concluded that under article I, section 7, it could see "no principled difference between the inevitable discovery rule and the independent source doctrine." 85 Wn. App. at 576.

Accordingly, the *Richman* court held that the inevitable discovery rule as set forth by the federal courts, Justice Dolliver's dissent in *Broadnax*, 98 Wn.2d at 309, and Divi-

---

[5]"No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7.

sion One in *White*, 76 Wn. App. at 809, "contains adequate safeguards to ensure that police misconduct does not erode the privacy protections provided by article 1, section 7." 85 Wn. App. at 577. The *Richman* court further held that under the inevitable discovery doctrine, illegally obtained evidence is admissible "only when the State can prove that the evidence would have been inevitably discovered under proper and predictable investigatory procedures." 85 Wn. App. at 577 (citing *White*, 76 Wn. App. at 809). "The State must prove this inevitability by a preponderance of the evidence." *Richman*, 85 Wn. App. at 577 (citing *Warner*, 125 Wn.2d at 889); *see also Nix*, 467 U.S. at 444 (cited in *Warner*, 125 Wn.2d at 889).

The *Richman* court reasoned that the reasonableness prong of *Broadnax* was particularly appropriate in light of the "enhanced privacy concerns" addressed under article I, section 7. *Richman*, 85 Wn. App. at 577. "Under article I, section 7, determining whether a particular privacy interest was unduly invaded requires consideration of whether the privacy expectation is objectively reasonable, and also whether it is one that has been traditionally held." *Richman*, 85 Wn. App. at 577-78 (citing *State v. Faford*, 128 Wn.2d 476, 484-85, 910 P.2d 447 (1996), and *State v. Myrick*, 102 Wn.2d 506, 510-11, 688 P.2d 151 (1984)). "Thus, by analyzing the reasonableness of the officer's actions in light of the privacy interest at stake, courts can ensure that application of the inevitable discovery doctrine does not erode the protections of article I, section 7." *Richman*, 85 Wn. App. at 578.

When the *Richman* court referred to the preponderance standard, it apparently did so with regard to *Broadnax*'s second and third prongs. *Id.* at 577. Although the *Richman* court did not clarify whether it intended the preponderance standard to apply to the first *Broadnax* factor, the *Richman* court clearly used that standard in its application of the doctrine to the facts in that case. *See id.* at 579 (finding it more likely than not that evidence would have been discovered in search incident to arrest).

Moreover, the *Richman* court, in consideration of the greater privacy protection provided by article I, section 7, imposed a heavier burden on the State by adopting the reasonableness requirement set forth in *Broadnax. Id.* at 577-78. Imposing a still greater burden in the form of a clear and convincing standard would not necessarily serve the deterrence function of the exclusionary rule. *See id.* at 576. From a practical standpoint the rule would become pointless. *See Nix,* 467 U.S. at 445 (rejecting "absence of bad faith" requirement as "formalistic, pointless, and punitive").

■ We agree with the sound policy reasons set forth in *Richman* and, thus, hold that the preponderance standard applies to all three *Broadnax* factors when applying the inevitable discovery rule under the state constitution. *Richman,* 85 Wn. App. at 576-77; *see Nix,* 467 U.S. at 444; *Warner,* 125 Wn.2d at 889. But applying the *Broadnax* factors to this case, we find that the State cannot meet its burden even under the preponderance standard.

With regard to the first *Broadnax* factor, Reyes and the State agree that the State must show that the police did not act unreasonably or to accelerate the discovery of the evidence in question. 98 Wn.2d at 309 (Dolliver, J., dissenting); *White,* 76 Wn. App. at 809. Thus, the question is whether Beckwell acted reasonably in light of Reyes' privacy interests. *Richman,* 85 Wn. App. at 578.

Clearly, a citizen has a "traditionally held privacy interest" in the contents of his or her own pockets. *See id.* (discussing contents of briefcase). Although the State does not challenge the trial court's finding that Reyes did not give "voluntary and informed" consent, it nonetheless argues that Beckwell acted reasonably because he believed he had valid consent from Reyes. *See State v. McKenna,* 91 Wn. App. 554, 559, 958 P.2d 1017 (1998) (trial court's finding of lack of consent is verity if unchallenged on appeal). In other words, the State is arguing that the officer acted in good faith.

Consent is one of the established and well-delineated

exceptions to the general rule that warrantless searches are per se unreasonable. *State v. Walker,* 136 Wn.2d 678, 682, 965 P.2d 1079 (1998) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *State v. Leach,* 113 Wn.2d 735, 738, 782 P.2d 1035 (1989); *Jacobsen v. City of Seattle,* 98 Wn.2d 668, 672, 658 P.2d 653 (1983)). But the *Terry* decision, relied upon by Justice Dolliver in formulating the *Broadnax* reasonableness requirement, warned strongly against relying on the "good faith" of the arresting officer. *Terry,* 392 U.S. at 22; *Broadnax,* 98 Wn.2d at 309.

Under *Terry,* the reviewing court must base its determination as to reasonableness upon objective evidence. 392 U.S. at 21-22. And the *Richman* court relied on objective evidence of the facts surrounding the challenged search in evaluating the reasonableness of the officer's actions in light of the suspect's privacy interests. 85 Wn. App. at 578-79.

██ One objective indicator of reasonableness is that the officer conducting the search had probable cause to arrest the suspect. *Richman,* 85 Wn. App. at 578; *White,* 76 Wn. App. at 809. "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonable trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed." *State v. Terrovona,* 105 Wn.2d 632, 643, 716 P.2d 295 (1986).

In *Richman,* the facts before the officer at the time of the otherwise illegal search were sufficient to find probable cause to arrest. 85 Wn. App. at 579-80. In *White,* the officer stumbled on the evidence while searching for the suspect, whom he clearly had probable cause to arrest. 76 Wn. App. at 809.

"Probable cause to arrest must be judged on the facts known to the arresting officer before or at the time of arrest." *State v. Gillenwater,* 96 Wn. App. 667, 670, 980 P.2d 318 (1999). Here, Beckwell did not possess information giving him probable cause to arrest Reyes at the time of the

search. Neither he nor Jelcick observed Reyes participating in the suspected drug transactions. And although they knew Reyes possessed a suspended driver's license, neither officer saw Reyes operate a motor vehicle. Moreover, the officers had no knowledge of outstanding warrants before the search. *See McKenna*, 91 Wn. App. at 562-64 (holding that search incident to arrest invalid when officer knew of outstanding warrant before search, but, because of crowded jail, had only made a noncustodial arrest).

The State's reliance on Beckwell's subjective beliefs stands in stark contrast to the objective evidence of probable cause supporting the reasonableness of the officers' actions in *Richman* and *White*. *Richman*, 85 Wn. App. at 579; *White*, 76 Wn. App. at 809. Because the State has not produced evidence that Beckwell had probable cause to arrest Reyes before the search or that the officer could have conducted a legal search before making the arrest, it has failed to show that the officer acted reasonably. *Cf. White*, 76 Wn. App. at 809.

Further, the officer's actions were unreasonable if viewed as a *Terry* stop and search. Given the background information that the officers obtained before contacting Reyes, Beckwell had reasonable and articulable grounds to make the contact for investigative purposes. *See Terry*, 392 U.S. at 22 ("a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest"). And given his safety concerns, Beckwell arguably had a reasonable basis to search Reyes for weapons. *Id.* at 30.

■ But Beckwell acknowledged that he was following standard procedure for a narcotics investigation by seeking permission to search for weapons *and narcotics*. According to Beckwell's testimony, he was looking for drugs, as well as weapons. A search focused on the discovery of narcotics exceeds the constitutional scope set forth in *Terry* and, therefore, we cannot view Beckwell's actions as reasonable.

392 U.S. at 30 (scope of search limited to outer clothing of person in an attempt to discover weapons).

Moreover, there is a second part to this inquiry: the police must not act so as to "accelerate the discovery of the evidence in question." *White*, 76 Wn. App. at 809. Here, as Beckwell made clear, one purpose of the search was to determine whether Reyes was carrying narcotics. Thus, the State has failed to meet the first of the *Broadnax* criteria; the police actions were not reasonable and were aimed at accelerating discovery.[6] *Cf. Richman*, 85 Wn. App. at 579; *White*, 76 Wn. App. at 809.

Nor has the State satisfied the second *Broadnax* factor, that the officers used proper and predictable police procedures, or the third *Broadnax* factor, that those procedures would have inevitably led to the evidence. *Richman*, 85 Wn. App. at 577; *White*, 76 Wn. App. at 809. It was not proper under these circumstances to conduct a search for drugs before there was probable cause to make the arrest. And, as Reyes correctly points out, there was no testimony at the suppression hearing as to what the officers would have done absent the illegal search. Consequently, assuming Beckwell had not conducted the unreasonable search, we can only speculate as to what would have occurred.

It is possible that Reyes would have immediately exchanged seats with his companion, who might have driven the twosome away before dispatch reported the outstanding warrant. Even assuming that Reyes had still been present at the time of the dispatch report of the outstanding

---

[6]Reyes, citing *State v. Rife*, 133 Wn.2d 140, 943 P.2d 266 (1997), also claims that the State acted unreasonably because the officers ran a warrant check on him. The State argues that it acted reasonably because the officers radioed dispatch before the search and asked them to run a license check on Reyes' vehicle, not a warrant check.

Because the focus of inquiry is upon the officer's actions surrounding the search and there is no evidence that the decision to report to dispatch had any role in the decision to search, this issue is irrelevant to our reasonableness analysis. *Richman*, 85 Wn. App. at 578-79; *White*, 76 Wn. App. at 809. Further, the record indicates that Beckwell contacted dispatch to run a license check, not a warrants check. Thus, we find no violation under *Rife*. 133 Wn.2d at 146.

warrant, there was no evidence indicating whether the officers would have arrested him at that time. Absent evidence proving that the officers would háve followed proper and predictable investigative procedures, under these facts the State cannot satisfy the third *Broadnax* factor, that such procedures would have inevitably led to the discovery. *Cf. Richman*, 85 Wn. App. at 579; *White*, 76 Wn. App. at 809.

Because the State failed to carry its burden of satisfying the three *Broadnax* factors, the drug evidence was not admissible under the inevitable discovery rule. *Cf. Richman*, 85 Wn. App. at 579-80; *White*, 76 Wn. App. at 809. Consequently, the trial court erred in denying Reyes' suppression motion. *Cf. Richman*, 85 Wn. App. at 580; *White*, 76 Wn. App. at 809.

We reverse and remand for entry of judgment of dismissal.

ARMSTRONG, A.C.J., concurs.

HUNT, J. (dissenting) — I respectfully dissent from the majority's conclusion that, because the police acted unreasonably in searching Reyes without consent, the inevitable discovery doctrine is inapplicable, despite discovery of an outstanding arrest warrant for Reyes shortly thereafter.

The officers knew Reyes from prior contacts, knew that he had a suspended driver's license, and suspected that illegal drug transactions were occurring inside his restaurant, outside which Reyes' vehicle was parked and the officers were surveilling. The majority agrees that the officers acted reasonably in approaching to investigate briefly when they saw Reyes in the driver's seat of his car. *See Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968).

As the officers approached, they radioed dispatch to report the vehicle's license number, consistent with standard officer safety procedure. Within five minutes, dispatch

reported back that there was an outstanding warrant to arrest the vehicle's owner, Tomas Z. Reyes. The majority acknowledges that the officers would have been authorized to arrest Reyes on the warrant only if their activity until that point had been reasonable. I would hold that, even though the State concedes that the officers' initial warrantless search of Reyes and seizure of drugs was unreasonable, such antecedent unreasonableness does not extinguish the officers' independent, preexisting, though momentarily unknown, authority and duty to arrest Reyes on the warrant.

The "reasonableness" component of the inevitable discovery doctrine exists to secure basic Fourth Amendment protections[7] and the enhanced privacy guarantees of our state's constitution, especially freedom from unreasonable, warrantless searches and seizures.[8] But an arrest warrant is a separate, legal determination by a neutral and detached magistrate that a suspect's Fourth Amendment and privacy rights must yield to the governmental intrusion. *See Steagald v. United States*, 451 U.S. 204, 214 n.7, 101 S. Ct. 1642, 1648 n.7, 68 L. Ed. 2d 38 (1981); *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. Neither *Broadnax* nor its progeny, on which the majority relies, involved an outstanding arrest warrant.

Despite the officers' initial unwarranted frisking for narcotics and subsequent arrest of Reyes, (1) the record shows by a preponderance of the evidence[9] they received the arrest warrant information mere minutes after initially contacting Reyes; (2) inevitably the officers could have legally arrested Reyes on the warrant; and (3) they could then have conducted a legal search incident to arrest and discovered and seized the cocaine on his person. It is highly unlikely that the police would have lost contact with Reyes

---

[7]*State v. Broadnax*, 98 Wn.2d 289, 309, 654 P.2d 96 (1982) (citing *Terry*, 392 U.S. at 21-22, 88 S. Ct. at 1880).

[8]*State v. Richman*, 85 Wn. App. 568, 577, 933 P.2d 1088, *review denied*, 133 Wn.2d 1028 (1997).

[9]This is the standard of proof recognized by the majority.

within the short time it took for the dispatcher to respond with the arrest warrant information, especially since the police knew Reyes, knew where his restaurant was located, knew his car was parked outside, and knew that Reyes could not legally drive. Neither the Fourth Amendment nor the state constitution's right to privacy insulate persons from arrest on a legally issued warrant; such persons do not enjoy a reasonable expectation of freedom from arrest. I would affirm the trial court.