[No. 43856-5-I.   Division One.   November 13, 2000.]

THE STATE OF WASHINGTON, *Respondent,* v. TAN LE, *Appellant.*

*Shannon B. Marsh*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Scott A. Marlow, Deputy*, for respondent.

BAKER, J. — While investigating a residential burglary call, a police officer saw a young Asian male exiting the front door of the home. Officers gave chase but were unable to locate or track the suspect. Soon thereafter, acting on a tip, officers forcibly entered the home of Tan Le and arrested him without a search warrant or an arrest warrant. The first officer was called to Le's residence and there identified Le as the suspect she had seen fleeing the scene of the crime approximately three hours earlier. The trial court suppressed all physical evidence discovered in Le's home as fruits of an illegal search, but refused to suppress the officer's postarrest identification of Le, reasoning that the officers had probable cause to arrest him and there was an independent basis for her identification. Le was found guilty of residential burglary, and now appeals.

We hold that Le was illegally arrested and that the officer's postarrest identification of Le should have been suppressed. However, because the in-court identification was admissible, and because the postarrest identification was harmless error, we affirm the conviction.

I

Police officer Diana Nollette responded to a burglary in progress call placed by a man who saw two young Asian males jump over his neighbors' fence. Officer Nollette and other officers set up a perimeter around the home and announced their presence. Officer Nollette saw an Asian male fleeing the residence. She gave chase until she lost him, then returned to the house.

At that point, a second Asian male stepped out of the front door of the house. Officer Nollette ordered the suspect to stop, and he turned and looked directly at her for approximately 10 seconds before running away. She gave chase until she lost sight of him, then broadcast a description of the suspect. A K-9 officer was called in to assist with the search. Meanwhile, the homeowner told police that he believed a firearm was missing from his home.

Officer Michael Lewis and his tracking dog arrived on the scene and searched the area. Ninety minutes into the search, the officer saw a nearby residence with the front door open. Officer Lewis and the tracking dog searched the house but did not find anyone there. Unable to locate a suspect, they terminated the search and left the scene.

Approximately 15 minutes later, a local resident called 911 and indicated that a "young man" had just run through his yard and into the house that had just been searched by Officer Lewis. No further description of the suspect was given. Police returned to the house and found the front door closed and locked. One of the officers saw someone inside running toward the rear of the residence. Although he lacked a search warrant, Officer Lewis and his tracking dog entered the home through an unlocked window and searched the house. Officer Lewis noticed a number of locked doors in the basement of the residence. Unable to determine whether the house was empty, Officer Lewis waited until a superior officer arrived. Still lacking a warrant, the superior officer gave permission to break into

the locked rooms. As Officer Lewis kicked in one door, he heard a voice coming from another room and ordered the occupant to come out. The suspect exited the room and was immediately arrested. That person was defendant Tan Le, who resided at the home where the arrest took place.

Officer Nollette was called to the scene, where she identified Le as the second person she had chased from the burglarized residence approximately three hours earlier. She indicated that Le was not wearing the same clothing that he wore when she saw him fleeing the scene of the crime, but she was certain that he was the same person. Officers seized some clothing from the residence during the search.

Le was charged with residential burglary and theft of a firearm. At a CrR 3.6 hearing prior to trial, Le moved to suppress all physical evidence seized from his residence as fruits of an illegal search. In addition, Le moved to suppress Officer Nollette's identification of him as the fruit of an illegal arrest. The trial court granted Le's motion to suppress physical evidence, finding that the warrantless search of Le's home was illegal and that the "hot pursuit" and "exigent circumstances" exceptions were inapplicable. However, the court refused to suppress Officer Nollette's postarrest identification of Le as fruit of the poisonous tree, concluding that the arrest was properly supported by probable cause and the officer had an independent basis for her identification. The trial court later permitted Officer Nollette to identify Le in court. The jury acquitted Le of theft of a firearm, but found him guilty of residential burglary. Le appeals.

## II

■ We review a trial court's decision to admit or exclude evidence for an abuse of discretion.[1] A trial court abuses its

---

[1] *Viereck v. Fibreboard Corp.*, 81 Wn. App. 579, 587, 915 P.2d 581 (1996).

discretion when its decision is manifestly unreasonable or based on untenable grounds.[2]

Le argues that Officer Nollette's postarrest identification of him should have been suppressed as the fruit of an illegal arrest. If the arrest was legal, then the officer's postarrest identification of Le would clearly be permissible. Therefore, as a preliminary matter, we must first determine whether Le was illegally arrested.

■ A police officer may make a warrantless felony arrest in a public place if supported by probable cause.[3] However, in the absence of exigent circumstances, the Fourth Amendment to the United States Constitution prohibits police from making a warrantless, nonconsensual entry into a suspect's home in order to make a routine felony arrest.[4] This is true even where the arrest is supported by probable cause.[5]

Exigent circumstances justifying warrantless police entry into a home to carry out an arrest may be found where: (1) a grave offense, particularly a violent crime, is involved; (2) the suspect is reasonably believed to be armed; (3) there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) the suspect is likely to escape if not apprehended; and (6) the entry is made peaceably.[6] Five additional examples of exigent circumstances include: (7) hot pursuit; (8) fleeing suspect; (9) danger to arresting officer or to the public; (10) mobility of the vehicle; and (11)

---

[2] *Woodhead v. Disc. Waterbeds, Inc.*, 78 Wn. App. 125, 131, 896 P.2d 66 (1995).

[3] *United States v. Watson*, 423 U.S. 411, 423, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976); *State v. Solberg*, 122 Wn.2d 688, 696, 861 P.2d 460 (1993); RCW 10.31.100.

[4] *Payton v. New York*, 445 U.S. 573, 576, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *Solberg*, 122 Wn.2d at 696-97.

[5] *Payton*, 445 U.S. at 588; *State v. Ramirez*, 49 Wn. App. 814, 818, 746 P.2d 344 (1987).

[6] *Dorman v. United States*, 435 F.2d 385, 392-93 (D.C. Cir. 1970); *State v. Terrovona*, 105 Wn.2d 632, 644, 716 P.2d 295 (1986).

mobility or destruction of the evidence.[7]

Here, the trial court analyzed all of these factors and concluded that the warrantless search of Le's home violated his federal and state constitutional rights. Specifically, the court concluded that the exigent circumstances exception was inapplicable to the case, and that there was no "hot pursuit" because the pursuit had ended well before Le was seized. The court nevertheless held that the arrest of Le was proper because it was supported by probable cause. This ruling was plainly incorrect. In the absence of consent or exigent circumstances, the police were constitutionally prohibited from making a warrantless entry into Le's home to make a felony arrest, even if probable cause existed to arrest him.[8] The State does not assign error to the trial court's findings that the exigent circumstances and hot pursuit exceptions to the warrant requirement did not apply to this case. We hold that Le was illegally arrested. We need not decide whether there was probable cause to arrest Le in order to reach this conclusion.

The principal issue before us in this case is whether Officer Nollette's postarrest identification of Le should have been suppressed under the exclusionary rule as the fruit of an illegal arrest. Le argues that the postarrest identification should have been excluded because the State may not exploit an illegal arrest to obtain incriminating evidence. The State argues that the identification was admissible despite any extraneous procedural illegalities because Officer Nollette observed Le prior to the illegal search, and thus there was an independent basis for the pretrial identification. Unfortunately, both parties greatly oversimplify the required analysis.

The exclusionary rule requires courts to suppress evidence obtained through violation of a defendant's consti-

---

[7] *State v. Counts*, 99 Wn.2d 54, 60, 659 P.2d 1087 (1983); *Terrovona*, 105 Wn.2d at 644.

[8] *Payton*, 445 U.S. at 590; *State v. Griffith*, 61 Wn. App. 35, 41, 808 P.2d 1171 (1991).

tutional rights.[9] The purpose of the rule is to deter police from exploiting their illegal conduct and to protect individual rights.[10] Under the "fruit of the poisonous tree" doctrine, the exclusionary rule applies to evidence derived directly and indirectly from the illegal police conduct.[11] Derivative evidence will be excluded unless it was not obtained by exploitation of the initial illegality or by means sufficiently distinguishable to be purged of the primary taint.[12] To prove that the evidence was purged of taint, the State must show either that: (1) intervening circumstances have attenuated the link between the illegality and the evidence;[13] (2) the evidence was discovered through a source independent from the illegality;[14] or (3) the evidence would inevitably have been discovered through legitimate means.[15]

Although Washington courts have addressed the issue of whether in-court identifications are admissible, the related issue of whether postarrest identification evidence is a tainted fruit of an illegal arrest is one of first impression in Washington.[16] Elsewhere, this issue has caused courts "particular difficulty."[17]

Professor LaFave urges that an identification following an illegal arrest should be excluded as direct evidence, unless the identification is sufficiently attenuated from the

---

[9] *State v. White*, 97 Wn.2d 92, 111-12, 640 P.2d 1061 (1982).

[10] *State v. Avila-Avina*, 99 Wn. App. 9, 18, 991 P.2d 720 (2000).

[11] *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

[12] *Wong Sun*, 371 U.S. at 488.

[13] *State v. Warner*, 125 Wn.2d 876, 888, 889 P.2d 479 (1995).

[14] *State v. Richman*, 85 Wn. App. 568, 575-76, 933 P.2d 1088 (1997).

[15] *State v. Reyes*, 98 Wn. App. 923, 927, 993 P.2d 921 (2000).

[16] In *State v. Mathe*, 102 Wn.2d 537, 688 P.2d 859 (1984), the defendant argued that both the pretrial photographic identification and the in-court identification should have been excluded. The court affirmed the conviction, but based its decision solely on the admissibility of the in-court identification without discussing the pretrial identification. *Mathe*, 102 Wn.2d at 545-47.

[17] 4 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 11.4(g), at 431 (2d ed. 1987).

primary illegality.[18] Courts following this approach have applied essentially the same attenuation analysis used in *Brown v. Illinois*[19] to determine the connection between an illegal arrest and a confession.[20] These factors include: (1) temporal proximity, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct.[21]

Here, the postarrest identification was not attenuated from the illegal arrest. Regarding the first and second factors, the officer's identification of Le occurred almost immediately after his illegal arrest, and there were no intervening circumstances (such as bringing the defendant into court) which might have purged the taint. As for the third factor, the apparent purpose of the illegality was *to* arrest Le immediately without bothering to obtain a warrant. The trial court found no reason why the officers could not have contained the house for a brief time further so that a warrant could be obtained, and expressed its concern that the officers gave no excuse for their failure to do so. The Fourth Amendment requirement to obtain a warrant is not a mere administrative inconvenience. It is a fundamental protection against unreasonable searches and seizures. We hold that the officer's postarrest identification of Le was not sufficiently attenuated to purge the primary taint.

■■ We next determine whether any of the exceptions to the exclusionary rule purged that identification of its taint. Not all courts have agreed on this issue. One court held that the "inevitable discovery" exception excused the illegal police conduct because the illegal arrest merely hastened the inevitable confrontation rather than influencing its outcome.[22] But this reasoning is not persuasive, for it erases the taint by conveniently assuming that the police

---

[18] 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 11.4(g), at 433 (2d ed. 1987).

[19] 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975).

[20] *See, e.g., Ferguson v. Maryland*, 301 Md. 542, 483 A.2d 1255 (1984).

[21] *Brown*, 422 U.S. at 603-04.

[22] *Pennsylvania v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972).

would eventually effect a lawful arrest of the defendant. More importantly, such a result would eviscerate the exclusionary rule by readily excusing police failure to obtain a warrant. Similarly, based on the "independent source" doctrine, another court held that a pretrial identification was admissible because it emanated from the victim's recollections of the crime that occurred prior to the illegal arrest.[23] But the victim's pretrial identification of the defendant was made possible only because of the illegal arrest. Applying the independent source doctrine under these circumstances would likewise permit the police to ignore the requirement for an arrest warrant, secure in the knowledge that the victim's postarrest identification of the defendant will still be admissible.

■ Nevertheless, relying heavily on *United States v. Crews*,[24] the State urges this court to apply the independent source doctrine to validate both the postarrest and in-court identifications of Le. In *Crews*, the police seized a robbery suspect on pretextual reasons, photographed him at police headquarters, and released him. The photographs were shown to the robbery victims, who identified the suspect as the robber. The defendant was then taken into custody, where the victims identified him at a court-ordered lineup.[25] The trial court ruled that the initial seizure was an illegal arrest, and accordingly suppressed the photographic and lineup identifications, but permitted the victims to identify the defendant in court.[26] The circuit court of appeals reversed, holding that one of the robbery victim's in-court identification should have been suppressed as fruit of the unlawful police activity.

The United States Supreme Court reversed and reinstated the conviction, reasoning that a victim's in-court identification has three distinct elements: (1) the victim is

---

[23] *Missouri v. Lynch*, 528 S.W.2d 454 (Mo. Ct. App. 1975).

[24] 445 U.S. 463, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980).

[25] *Crews*, 445 U.S. at 467.

[26] *Crews*, 445 U.S. at 468.

present at trial; (2) the victim possesses the knowledge of and the ability to reconstruct the prior criminal occurrence and to identify the defendant from observations at the time of the crime; and (3) the defendant is physically present.[27] The Court concluded that none of these elements had been obtained by exploitation of the defendant's Fourth Amendment rights. First, the victim's identity and cooperation were obtained prior to the illegal police activity. Second, the illegal arrest did not infect the victim's ability to give accurate identification testimony based upon her observations at the time of the robbery:

> Based upon her observations at the time of the robbery, the victim constructed a mental image of her assailant. At trial, she retrieved this mnemonic representation, compared it to the figure of the defendant, and positively identified him as the robber. No part of this process was affected by respondent's illegal arrest.[28]

The Court acknowledged that under some circumstances, the intervening photographic and lineup identifications could affect the reliability of the in-court identification and render it inadmissible, but under the facts of that case the trial court found that the victim's in-court identification of the defendant rested on an independent recollection of her initial encounter. In support of this conclusion, the Court noted that the victim viewed the assailant at close range under well-lit conditions and with no distractions for five to ten minutes; that he closely matched her description of him; that she immediately identified him in pretrial identification procedures; and that she first identified him only a week after the initial encounter.[29]

Third, the defendant's presence at trial was not obtained by exploitation of his rights because an illegal arrest, without more, is not a bar to prosecution. Thus, "[r]espondent is not himself a suppressible 'fruit,' and the illegality of

---

[27] *Crews*, 445 U.S. at 471.

[28] *Crews*, 445 U.S. at 472.

[29] *Crews*, 445 U.S. at 473.

his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct."[30]

Clearly, *Crews* provides the correct analytical framework where the pretrial identification was inadmissible and the issue is whether the in-court identification must also be excluded. But the *Crews* analysis did not address the admissibility of pretrial identifications, because in *Crews* the United States Supreme Court simply accepted the trial court's finding that the pretrial photographic and lineup identifications were properly suppressed. Here, in contrast, Le challenges the postarrest identification.

The State contends that the *Crews* analysis validates both the postarrest and in-court identifications of Le because Officer Nollette's initial observation of Le before the arrest served as an independent source of information that allowed her to identify him after the arrest. We disagree. As the *Crews* Court explained, in-court identifications are composed of the victim's presence in the courtroom, the victim's independent, prearrest recollection of the defendant's face, and the defendant's presence in the courtroom. This allows the victim to retrieve her untainted, prearrest mental image of the defendant and compare it to the defendant in order to produce the identification. The defendant's presence is not affected by the Fourth Amendment violation because an illegal arrest is not a bar to prosecution.[31] Thus, the independent source—the victim's mental image—is connected with the defendant's legal presence in the courtroom to produce the identification. But, where the identification is made outside of the courtroom (at the scene of the crime, at the station house, or at a lineup), the identification is nonetheless tainted because it could not have been made unless the defendant's presence was secured by the illegal arrest. The key difference is the

---

[30] *Crews*, 445 U.S. at 474.

[31] It can be argued that the defendant's presence in the courtroom is tainted because he would not be there but for the illegal arrest. But the *Crews* Court rejected the notion that the defendant himself is a suppressible fruit. *Crews*, 445 U.S. at 474.

defendant's location. In the courtroom, the defendant is barred from arguing that his presence is unlawful. But at a pretrial identification made possible only by the illegal arrest, the State has no comparable argument to purge the taint of the illegal arrest arising from the defendant's presence. This analysis best enforces the deterrence purposes of the exclusionary rule.

It is also worth noting that in *Crews*, the reliability of the witness's testimony was of paramount importance because she had observed the defendant via photographs and a lineup, and that evidence was later excluded as fruit of the illegal arrest. In this context, the Court needed to carefully examine whether the witness's in-court identification arose from a source untainted by that excluded evidence. In other words, was the witness's lawful in-court identification tainted by her observation of him in the lineup? Or was her prearrest observation of the defendant an untainted "independent source" of information that made her in-court identification reliable?

Thus, the Court was concerned with the reliability of the witness's in-court identification, which might have been tainted by the excluded pretrial identifications were it not for the independent source of her recollections. The independent source of information served to show that the in-court identification was not affected by the excluded pretrial identifications. In contrast, where the pretrial identification is being challenged, the taint arises directly from the illegal arrest. This taint is not purged by the "independent source" of information. To so hold would eviscerate the very purpose of the exclusionary rule by excusing the illegality of the arrest and accepting the assertion that the victim's recollection of the defendant at the scene of the crime was an "independent source."[32]

We conclude that the postarrest identification of Le was not attenuated from the primary illegality. Because the

[32] The *Crews* Court seemed to acknowledge this issue in a footnote:

"Respondent contends that the 'independent source' test of *United States* v. *Wade* and *Stovall* v. *Denno*, although derived from an identical formulation in *Wong Sun*, seeks only to determine whether the in-court identification is sufficiently reliable to satisfy due process, and is thus inapplicable in the context of

independent source analysis of *Crews* applies to in-court identifications but not to pretrial identifications, there are no applicable exceptions to the exclusionary rule. The testimony of Officer Nollette regarding her postarrest identification of Le was fruit of the poisonous tree, and should have been excluded. And, although counsel for Le indicated at oral argument that Le no longer challenges the admissibility of the in-court identification, we note in passing that it was admissible under *Crews*.

## III

■ Our final task is to determine whether the improperly admitted postarrest identification evidence requires reversal. Because Le's Fourth Amendment rights were violated, this is an error of constitutional magnitude. Constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless.[33] "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result, despite the error."[34] We examine the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt.[35]

After excluding Officer Nollette's inadmissible postarrest identification testimony, we conclude that the remaining evidence meets this constitutional harmless error standard. Officer Nollette testified that she got a very good look at Le before he fled the scene of the burglary. Officer Nollette observed Le from a short distance in broad daylight for

---

this Fourth Amendment violation. We agree that a satisfactory resolution of the reliability issue does not provide a complete answer to the considerations underlying *Wong Sun*, but note only that in the present case both concerns are met." *Crews*, 445 U.S. at 473 n.19 (citations omitted).

[33] *State v. Whelchel*, 115 Wn.2d 708, 728, 801 P.2d 948 (1990).

[34] *State v. Aumick*, 126 Wn.2d 422, 430, 894 P.2d 1325 (1995).

[35] *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985).

approximately 10 seconds before he ran away. She then readily identified him in court approximately six months later. Furthermore, one of Le's neighbors testified that he called 911 when he saw a "young man" running through his yard and into the house Officer Lewis had recently searched. The house turned out to be Le's house, and the sole person apprehended there was Le. This evidence is sufficiently overwhelming to lead to a finding of guilt. Thus, we affirm the conviction despite the error.

Affirmed.

COLEMAN and WEBSTER, JJ., concur.