IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34844-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAESAR ARROYO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — This appeal focuses on procedure rather than on substance and ultimately fails for that reason. We affirm the convictions and expressly note that our decision does not preclude a personal restraint petition (PRP) raising the potentially meritorious issue that should have been raised on appeal. No costs will be awarded.

FACTS

Caesar Arroyo appeals from his Okanogan County convictions for attempting to elude a police vehicle, first degree driving while license suspended (DWLS 1), and driving while under the influence (DUI). The charges arose from a traffic stop attempted by Trooper Jeremy DeLano at about 10:30 p.m. on June 23, 2015 of a black Honda Civic.

The Civic pulled over into a parking lot initially, giving the trooper time to see the driver's face under the lights, but the car then accelerated away. The trooper pursued the car, but terminated the pursuit when it became unsafe.

Advised of the vehicle's registration address in Omak, the trooper proceeded to that location. He was joined by Trooper Conner Bruchman and sheriff's deputies. The side of the house faced the street, while the front door faced a gravel driveway that connected to the street. Trooper DeLano knocked on the front door of the house while the other officers took up positions on the property. Trooper Bruchman went up the driveway somewhat past the front door and could see into the backyard. There he spotted the Honda Civic parked by the house; it was not visible from the street. He confirmed through dispatch that the car was the same one that Trooper DeLano had pursued.

The vehicle's registered owner, Eric Arroyo, had responded to DeLano's knock and stepped outside the house to talk to the trooper. Trooper DeLano immediately realized that Eric Arroyo was not the driver he had pursued. Eric Arroyo ultimately told DeLano that his older brother, Caesar, had used the car that day with Eric's permission. By that time, Bruchman had spotted a camper trailer in the backyard near the Civic, and, seeing movement inside, walked over and shined his flashlight into the window. Spotting three men inside, he ordered them out. Two of the men advised the trooper that the third, Caesar Arroyo, had been the driver of the Civic. Trooper DeLano responded and likewise identified Caesar Arroyo as the driver. He was arrested.

2

Obviously intoxicated, Caesar Arroyo was given a breath alcohol test and determined to be under the influence. The prosecutor ultimately filed the previously noted charges of attempting to elude, DUI, and DWLS 1. The defense moved to suppress evidence, arguing that the arrest of Caesar Arroyo was improper and that evidence of the DUI and the backyard identification should be suppressed. The motion proceeded to a hearing on October 28, 2016. The court announced its ruling three days later and denied the motion after applying the "open view" test of *State v. Seagull*, 95 Wn.2d 898, 632 P.2d 44 (1981). The deputy prosecutor present for the ruling was directed to advise the deputy prosecutor who had conducted the hearing to prepare findings.

The case proceeded to jury trial. The jury convicted Mr. Arroyo as charged. He timely appealed to this court; counsel was appointed to represent him.

Appellant's counsel ordered a verbatim report of proceedings that included the October 28 hearing, but not the October 31 ruling. Appellate counsel filed a brief on October 17, 2017 that contained one assignment of error—the findings required by CrR 3.6 had not been entered. The brief sought reversal of the convictions for that reason. The prosecutor then ordered transcription of the October 31 ruling, had it transmitted to this court, and filed a brief that argued that the trial court's oral ruling was sufficient to resolve the appeal. However, the required CrR 3.6 findings still were not entered. Appellant filed a reply brief reiterating that the missing findings justified reversal and

3

also arguing, in response to the prosecutor's brief, that the suppression hearing had been wrongly decided.

This court ordered that the missing findings be entered and transmitted here as clerk's papers. Once that was done, we inquired whether appellant's counsel desired to file a supplemental brief addressing the CrR 3.6 findings. Counsel declined the opportunity, indicating that the reply brief was sufficient to make her argument. A panel subsequently considered the case without argument.

ANALYSIS

This case is one of several recent filings where required findings have not been entered and, instead of resolving that problem, the appellate briefing has focused on procedural issues resulting from the original failure instead of substantively addressing the merits of the issues presented. That unfortunate focus leaves this court in no position to address the merits of the case.

A recently published opinion addresses what counsel should do when mandatory findings are missing. *State v. Yallup*, ___ Wn. App. 2d ___, 416 P.3d 1250 (2018). In short, counsel are to confer in an effort to resolve the issue and, failing that, appellant's counsel should bring the matter to this court's attention by motion. Respondent's counsel has a continuing obligation to enter the findings promptly or explain what difficulty has arisen that has prevented action. Only after the findings are entered and appellate counsel

fully informed about the issues should a brief be filed. This procedure allows a faster resolution of the merits of an appeal. *Id*. at 1255.

This procedure was not followed in this case and, accordingly, it suffers from many of the deficiencies identified in *Yallup*. Fundamentally, this case is not in a posture where this court is in a position to resolve the merits of the claim. The sole assignment of error concerns the absence of findings. That problem has been remedied. The sole requested relief is reversal or dismissal of the convictions due to the missing findings. However, that is not the remedy for missing findings. *State v. Head*, 136 Wn.2d 619, 622-625, 964 P.2d 1187 (1998). Instead, the remedy is remand for entry of findings. *Id*. That step is unnecessary in this case since the findings are, belatedly, already in place.

Thus, this court now is facing an appeal where the sole assignment of error no longer needs a remedy and the sole relief sought was never available. Although the reply brief puts together a credible argument that the *Seagull* decision has been eclipsed by more recent United States Supreme Court authority, the case on which it relies is also distinguishable. The appellant's argument itself also is based on an extension of unsettled authority.[1] Indeed, it is questionable how much *Seagull* applies to this case. However, none of these points are argued by the parties, primarily because the issue has

---

[1] *See Collins v. Virginia*, No. 16-1027 (U.S. May 29, 2018) https://www.supreme court.gov/opinions/17pdf/16-1027_7lio.pdf.

5

not been properly presented by the appeal and is only presented, to the extent it is at all, by a reply to an argument that there was no prejudice from the delayed findings.

There are additional problems. For one, the failure to assign error to the CrR 3.6 findings means that they are verities in this court. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). One of those findings, number six, expressly states that Trooper Bruchman was standing in the driveway near Trooper DeLano, and was able to observe the Honda Civic from that point. Clerk's Papers at 154. Since the house was accessed solely from the driveway, this finding would appear to allow the trooper's observations of the Honda to come into evidence. This would have appeared to have been at least a debatable point, but it cannot be debated given the failure to tackle the factual finding.

An additional problem with the briefing is the scope of the remedy from the allegedly illegal arrest of Mr. Arroyo in the backyard. At the suppression hearing, defense counsel argued that all of the DUI evidence derived from the arrest and the backyard identifications would be the fruit of the poisonous tree. That seems a very reasonable scope of suppression. *E.g.*, *State v. Tan Le*, 103 Wn. App. 354, 359-367, 12 P.3d 653 (2000). However, Mr. Arroyo does not argue that point at all here and seems to suggest that all evidence following the arrest should be excluded while failing to present any relevant authorities to support such a ruling. This, too, is an area that would have benefited from briefing by both parties.

Although more examples could be given, the preceding are sufficient. The briefing in this case raises more questions than it answers, obscuring what might be a successful argument on the merits. The failure of the appellant to brief the point also means that respondent has not had the opportunity to address these points, either. Accordingly, this court is in no position to do so.

As in *Yallup*, it is the prosecutor's initial error that put the case in its current posture. As there, we direct that no costs will be awarded since Mr. Arroyo did not cause that initial failure. Timely resolution of the findings problem would have significantly altered the trajectory of this appeal. It is not fair for Mr. Arroyo to pay the costs resulting from the absent findings.

The convictions are affirmed. Since this ruling does not address the merits of Mr. Arroyo's arguments, it will have no effect on any subsequent PRP challenge he might bring.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Siddoway, J.

No. 34844-0-III

FEARING, J. (dissenting) — I dissent from the majority's refusal to entertain the merits of Caesar Arroyo's appeal. The majority's declination to review the appeal promotes procedure over merits, wastes time, and creates more work for the parties, if not this court. I would direct the parties to prepare any needed further briefing, and then I would resolve the substance of Arroyo's Fourth Amendment challenge to the search of the camper trailer and his seizure from the trailer.

The majority outlines salient facts depicting the conduct of Caesar Arroyo that gave rise to his prosecution and to law enforcement's search of Arroyo's Omak residence and his arrest at the residence. I emphasize some of the court proceedings.

The State of Washington charged Caesar Arroyo with attempting to elude a pursuing police vehicle, driving while under the influence of intoxicants, and first degree driving with license suspended. Arroyo filed a pretrial motion to suppress evidence on the basis that officers performed an unlawful search of the camper trailer and thereby unlawfully detained him and gathered information from him. Arroyo argued that the search of his backyard violated the Fourth Amendment. He emphasized that the troopers failed to garner his brother Eric's consent to search the backyard, the open view doctrine did not control because the public could not view the Honda and camper trailer from a natural access point to the residence's front door, exigent circumstances did not justify a search, and law enforcement should have procured a search warrant before peeping inside

the camper trailer. Arroyo requested the trial court to suppress all evidence obtained from the illegal search.

After an evidentiary hearing, the trial court delayed ruling for one business day in order to read cases. The following business day, the court reconvened and announced its ruling denying the motion to suppress. During the second day's hearing, the trial court iterated extensive findings and conclusions. At the conclusion of the hearing, the trial court requested that the State prepare written findings of fact and conclusions of law. The State failed to submit any written findings or conclusions. The prosecution proceeded to trial, and during trial, the State introduced evidence challenged in the suppression motion.

The trial court convicted Caesar Arroyo on all charged counts. Arroyo appealed.

In his opening appeal brief, Caesar Arroyo assigned error only to the trial court's failure to enter findings of fact and conclusions of law on the denial of Arroyo's motion to suppress. CrR 3.6 addresses a pretrial motion to suppress, and CrR 3.6(b) reads: "If an evidentiary hearing is conducted, at its conclusion the court shall enter written findings of fact and conclusions of law." Instead of asking for remand for the entry of findings and conclusions, Arroyo sought reversal of the conviction because of a prejudicial delay of one and one half years in filing findings of fact.

In response to Caesar Arroyo's opening brief, the State conceded the absence of written findings of fact and conclusions of law attendant to the motion to suppress ruling.

2

The State argued, however, that the trial court made extensive oral findings of fact that this reviewing court should consider as substantially complying with CrR 3.6.

In a reply brief, Caesar Arroyo reiterated his argument that his convictions should be reversed because of the lack of findings but added the substantive argument that the trial court erred in denying the motion to suppress. Arroyo contended that law enforcement officers went beyond the implied license to approach one's front door when Trooper Conner Bruchman traveled further east on the gravel roadway and when both troopers entered the backyard. Arroyo did not expressly assign error to the trial court's denial of the motion to suppress.

After the filing of briefs, this appeals court directed the parties to procure findings of fact emanating from the order denying the motion to suppress from the trial court. On remand, the trial court entered findings of fact and conclusions of law. I list all of the findings in order to demonstrate the ability of this court to now address the merits of Caesar Arroyo's Fourth Amendment contentions.

> 1. On or about June 23rd 2015, Washington State Patrol Trooper Jeremy DeLano was on duty in the Omak area of Washington State. Trooper Delano observed a black Honda Civic. Trooper Delano noticed that one of the brake lights was not working. He also believed the exhaust system was too loud, and further observed that the car did not come to a complete stop at an intersection.
> 2. Trooper DeLano activated his emergency lights. The Honda's driver responded to this by pulling into a Chevron gas station and slowing down.
> 3. Instead of completely stopping, the driver stuck his head out the window of the car and yelled something at the Trooper. Trooper DeLano

3

was [sic] that the driver was wearing a baseball hat. The driver then drove away at high speed.

4. Trooper DeLano then activated his sirens as well as the emergency lights, and pursued the Honda at high speed. The Honda passed through a number of intersections, and Trooper Delano stopped the pursuit because of safety concerns. However, Trooper Delano was able to obtain the license plate number from the Honda, and from this he learned that the registered owner of the Honda, Eric Arroyo lived at 127 South Granite Street in Omak.

5. Trooper DeLano informed other police officers of these developments and drove to the address at 127 South Granite Street. Trooper DeLano knocked on the door of a house there and spoke [to] resident, Eric Arroyo. Trooper DeLano saw that Eric Arroyo was not the individual that he was pursuing earlier. Trooper DeLano asked Eric Arroyo where the Honda was. Eric Arroyo said he didn't know where it was or who was using it.

6. While Trooper Delano spoke to Eric Arroyo, Trooper Conner Bruchman stood outside in the southeast section of the property at 127 South Granite Street as a "cover" officer. Trooper Bruchman was not standing in the backyard, or within the house, but was in a position somewhat near and adjacent to Trooper DeLano and near the front door. From this position, Trooper Bruchman could observe some of the backyard that Trooper Delano wasn't able to see. Trooper Bruchman noticed a Honda in the backyard.

7. Trooper Bruchman used his flashlight and took a closer look at the Honda and its license plate. Trooper Bruchman and Delano moved into the backyard and confirmed that the Honda was the car involved in the pursuit earlier. Nobody was inside of the Honda.

8. After identifying the Honda, the [sic] Trooper Bruchman looked at his surroundings. Trooper Bruchman noticed that there was movement inside a nearby trailer. The trailer was in close proximity to the Honda, in the backyard of 127 South Granite Street. Trooper Bruchman pointed his flashlight at the trailer and saw what looked to be several people inside.

9. Trooper Bruchman asked for these three people to come out of the trailer. Three people exited the trailer and were detained. Among the three people were Caesar Arroyo, the Defendant.

10. Shortly after these three exited the trailer and were detained, Trooper Delano and Bruchman went inside the trailer for a manner of

4

> seconds. The Trooper's did not find anyone else inside the trailer, but did see a baseball hat in plain view.

Clerk's Papers at 153-55. Since this court reviews conclusions of law anew, I do not list the trial court's conclusions.

On the forwarding of the findings of fact and conclusions of law to this reviewing court, this court asked Caesar Arroyo if he wished to supplement his legal argument. Arroyo declined and wrote that he would rely on his reply brief.

The majority writes that it sits in the unfortunate position of not being able to address the merits of Caesar Arroyo's motion to suppress and the denial of the motion. I disagree. The parties effectually litigated the suppression motion before the trial court. This reviewing court now possesses all of the trial court record needed to lucidly analyze the substance of Arroyo's Fourth Amendment contentions. We hold the transcript of the evidentiary hearing pursuant to Arroyo's motion. We own the findings of fact and conclusions of law entered as a result of the motion to suppress hearing.

The majority notes that Caesar Arroyo and the State did not follow the procedure this court outlined in *State v. Yallup*, ___ Wn. App. 2d ___, 416 P.3d 1250 (2018) when confronted with the absence of mandatory findings of fact. Of course, the parties did not know of this recently adopted procedure. The majority writes that the appellant should prepare his or her opening brief only after late entry of the findings of fact. In so writing, the majority ignores that Caesar Arroyo previously filed a reply brief that addressed his

5

Fourth Amendment contentions. When asked if he wished to submit more briefing, Arroyo declined because he deemed his reply brief sufficient. This court acts unreasonably when impliedly compelling a party to file a new brief and when an earlier brief addressed the subject matter of the appeal.

The majority correctly faults Caesar Arroyo for only assigning error to the trial court's former failure to enter findings of fact and not assigning error to the denial of the motion to suppress. RAP 10.3(a)(4) directs an appellant to include an assignment of error in his brief for each error claimed on appeal. Nevertheless, by earlier assigning error to the lack of findings of fact in response to the motion to suppress and supplying a reply brief that challenges the search of the backyard and the seizure of Arroyo's person, Arroyo necessarily assigns error to the denial of the motion to suppress.

RAP 1.2 read, in relevant part:

> **(a) Interpretation.** These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands, subject to the restrictions in rule 18.8(b).
> . . . .
> **(c) Waiver.** The appellate court may waive or alter the provisions of any of these rules in order to serve the ends of justice, subject to the restrictions in rule 18.8(b) and (c).

This court breaches the words and spirit of RAP 1.2 by failing to address now the merits of Caesar Arroyo's appeal. In a case when we know the nature of the appeal, when the body of the brief argues the relevant issues and cites relevant authority, and when the

respondent suffers no prejudice, this court should exercise its discretion to consider the merits of the case or issue. *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995). Assuming Arroyo failed to comply with RAP 10.3(a)(4), this court may waive the violation of the rule. Waiver of the rule particularly promotes justice in this setting when the State, not Caesar Arroyo, failed to timely file the findings of fact, a failure that led to the awkward procedure on appeal.

The majority faults Caesar Arroyo for only expressly seeking, in his briefs, dismissal of the charges rather than suppression of the evidence. Because of Arroyo's omission in his brief, the majority adjudges itself powerless to grant the proper remedy of squashing evidence. Nevertheless, this court may assume that Arroyo seeks such relief by the argument raised in Arroyo's reply brief. We possess the intelligence to determine that suppression of the evidence and remand for a new trial constitutes the proper remedy for a Fourth Amendment violation. We also maintain the power to remand for a new trial after suppressing evidence. The first sentence of RAP 12.2 declares:

> The appellate court may reverse, affirm, or modify the decision being reviewed and take any other action as the merits of the case and the interest of justice may require.

The majority registers confusion as to the amount of evidence requested by Caesar Arroyo to be suppressed. I read Arroyo's brief to wish for suppression of all evidence emanating from the search of the backyard and the seizure of Arroyo inside the camper trailer, which would include the identification of Arroyo at the residence and the results

of the breathalyzer.  Assuming the majority remains confused, this court may ask Arroyo to clarify his request just as we previously directed the parties to enter findings of fact and conclusions of law.

The majority next suggests that the court needs more briefing particularly concerning the ramifications of *State v. Seagull*, 95 Wn.2d 898, 632 P.2d 44 (1981).  The majority also notes that the State's responding brief only addressed the failure to enter written findings of fact and the State has not addressed in brief form Caesar Arroyo's Fourth Amendment challenge.  Of course, this court holds the power to ask for additional briefing and has never before been reticent to forward such a request in other appeals.

The majority relegates Caesar Arroyo to now filing a personal restraint petition. This ruling by the majority imposes the obstacles inherent in a personal restraint petition to the review of the merits of Arroyo's Fourth Amendment challenge.  The filing of a personal restraint petition will only create additional work for Arroyo, the State, and this court.

_____
Fearing, J.

8